### UNITED STATES FIDELITY & GUARANTY CO. v. KOCH et al.

#### No. 6808.

Circuit Court of Appeals, Third Circuit.

Feb. 16, 1939.

Rehearing Denied March 16, 1939.

Robinson & McCamey, all of Pittsburgh, Pa., for appellant.

Leonard M. S. Morris, Louis Caplan, and Sachs & Caplan, all of Pittsburgh, Pa., for appellees.

Before MARIS and CLARK, Circuit Judges, and KALODNER, District Judge.

CLARK, Circuit Judge.

Our opinion in this case commences with an unusually detailed relation of the facts. In that recital special emphasis is directed to dates. This is done with a full realization that both the statement and decision of facts are in the normal course particularly the province of the trial court. Here, however, we think their recapitulation useful in illustration of our conclusions.

### The Claims in Litigation.

On April 12, 1934, plaintiff-appellant, a casualty insurance corporation, issued a combination automobile policy to the non-resisting defendant-appellee, Seymour Ress, for his Plymouth two door sedan. He was an Associated Press reporter and lived at the Beacon Apartment-Hotel in Pittsburgh. On June 3, 1934, while driving this car, Ress was involved in an accident (presumably a collision) in which his three passengers suffered personal injuries. One of these passengers was Flora Koch, the defendant-appellee. She is attempting to sustain an order of the District Court for the Western District of Pennsylvania entered in her favor on May 18, 1938, four years after the accident.

The two other passengers (sex undisclosed) obtained settlements from the plaintiff insurance company. One settlement was entirely voluntary and the other after entry of suit against Ress and his transmittal of the suit papers to the plaintiff-appellant. A memorandum in the company's files indicated an offer of $500 on November 9, 1934 to defendant-appellee Koch's present attorney, Louis Caplan, and its rejection by him.

### The Proceedings in the State Courts.

Thereafter, and on January 22, 1935, Flora Koch filed a negligence action in the usual form in the Common Pleas Court of Allegheny County. On January 29, 1935, the writ and statement of claim thereon were served on Ress by handing them to a clerk at the apartment-hotel at which he lived. This service seems to have been the ordinary substituted service (residence or place of abode) provided by statute in ac-

Harold E. McCamey, Charles A. Woods, Jr., Hamilton A. Robinson, and Dickie,

tions in personam where the defendant does not happen to be at home when the sheriff calls. 50 C.J. 490. Ress never appeared in this action, and on June 26, 1935, a default judgment was entered against him in favor of Flora Koch.

By November 15, 1935, Ress had received notice of the judgment of June 26th and of the empaneling of a sheriff's jury to assess damages thereon. On November 23, 1935, he advised the manager of suit preparation for the Pittsburgh District office of the appellant company of this notice. This was plaintiff-appellant's first knowledge of the Koch suit. The not unnatural reaction of plaintiff's manager was to consult counsel and the advice of a member of the firm now pressing this appeal was sought. That advice was of a Fabian character. Ress was told to employ his own counsel and make an effort to have the default judgment reopened. What reason he was expected to give for such a reopening is not revealed. As might be supposed, the statutes do not recognize caprice or indifference but require some sufficient reason for the omission to plead in due season, 34 C.J. 525. At any rate, the advice was not followed and the sheriff's jury liquidated damages in favor of Flora Koch for the sum of $3,359.75. The subsequent course of defendant-appellee's counsel leads us to believe that he now regrets the extra $360.

On a date undisclosed, except that it was at the January Term, 1936, defendant-appellee Koch issued a writ of execution (fi. fa.) upon her judgment as above and this writ was returned by the sheriff marked nulla bona. On some date again undisclosed except that it was after this return of execution and prior to March 31, 1936, Mr. Morris, another of the defendant Koch's attorneys now defending this appeal, telephoned plaintiff's preparation of suit manager already referred to and demanded payment of this unsatisfied judgment. Such payment was refused.

On another undisclosed date, but prior to November 5, 1936, defendant-appellee filed another negligence action in the Superior Court of New Haven County, Connecticut, based on the same accident in reparation of which judgment had been secured in the Common Pleas Court of Allegheny County. The papers in this suit were delivered to the plaintiff-appellant by persons unknown. On November 5, 1936, plaintiff-appellant through its attorneys filed an answer to this suit pleading specially the Pennsylvania judgment. On November 5, 1937, defendant-appellee issued a writ of execution attachment against the plaintiff-appellant alleging the unsatisfied judgment against Ress and the possession by it of certain monies, etc., of Ress. On November 12, 1937, defendant-appellee sued the plaintiff-appellant in the Common Pleas Court of Allegheny County in an action in assumpsit on the unsatisfied Pennsylvania judgment, the service being on the Insurance Commissioner.

### The Proceedings in the United States Courts.

On March 31, 1936, the plaintiff-appellant filed a petition for declaratory judgment under the Act of Congress permitting such a procedure, U.S.C.A., Title 28, section 400. This petition is in the usual form and claims an "actual controversy" between the parties. On April 27, 1937, defendant-appellee requested dismissal of the petition on the grounds inter alia that there was no "actual controversy", that the action was prematurely brought, and that her constitutional right to a trial by jury was in jeopardy. No factual reason for the alleged untimeliness was given and there was no showing that plaintiff-appellant even wished to dispense with a jury. Defendant-appellee asked in the alternative for a declaration that the defendant Ress had complied with the terms of the policy and that she was entitled to collect her Allegheny County judgment.

On October 21, 1936, the learned Judge in the court below heard witnesses who testified to the facts then in existence substantially as set forth under the headings in this opinion. There has been some disagreement as to the nature of declaratory judgment proceedings, 16 American Jurisprudence, Sec. 15, p. 289, some courts emphasizing their equitable character, Town of Manchester v. Town of Townshend, 109 Vt. 65, 192 A. 22, 110 A.L.R. 811. Professor Borchard, the "father" of the declaratory judgment in the United States, correctly, as we think, maintains: "Declaratory relief is neither legal nor equitable, but sui generis. It has the advantage of escaping the technicalities associated with equitable and extraordinary remedies, thus enabling the substantive goal to be reached in the speediest and most inexpensive form". Borchard, The Federal Declaratory Judgments Act, 21 Virginia Law Re-

view, 35, 38. And see also the report of the Senate Committee, Cong.Rec. (Feb. 1, 1930), 3009-3011.

At any rate, the Federal Declaratory Judgment Act in section 3 expressly provides for submission to a jury. Both Professor Borchard and Judge Parker of the Fourth Circuit, in commenting on this particular section, as applied to a situation exactly analogous to the one at bar, say:

"Naturally the company should not by a declaratory action, often inaccurately called an action in equity, be allowed to deprive the defendants of a jury trial. All the issues of fact, practically always present in these cases, can be tried by a jury; the Federal Declaratory Judgments Act and the rules or practice in the states provide for the submission of such issues to a special jury. And even though a jury in equity may be deemed 'advisory' only, this is not the case with a jury in the declaratory action". Borchard, Declaratory Judgments and Insurance Litigation (Address, before The Section of Insurance Law American Bar Association, Cleveland, Ohio, July 26, 1938) 15.

"The company seems to think that by asking a declaratory judgment it became entitled to a trial in equity without a jury and that this is a sufficient reason for granting declaratory relief notwithstanding the institution of the action on the policy; but this is clearly not the case as the defense to determine which the declaratory judgment was sought was legal and not equitable in character. Where the issues raised in a proceeding for a declaratory judgment are of this nature, they must be tried at law if either party insists upon it, for the statute so provides. 28 U.S.C.A. § 400 (3). And, irrespective of this provision of the statute, it is clear that the right of jury trial in what is essentially an action at law may not be denied a litigant merely because his adversary has asked that the controversy be determined under the declaratory procedure". Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, 325.

The learned District Judge intimated that he held the same views, saying:

"It is suggested, without deciding, that on the question of notice, if at issue, defendant is entitled to a trial by jury". Opinion filed October 29, 1937, Record, 71, 72.

On November 2, 1936, the last brief of counsel was due. On November 18th, a petition for leave to amend the answer to include the facts of the New Haven County suit was filed and amendment allowed the same day. Ten days later petitioner-appellant replied to this amendment explaining that defendant Ress "was probably entitled to a defense".

On December 11, 1936, the learned trial judge entered a decree pro confesso (note the equitable form) against the non-resisting defendant-appellee Ress. This decree specifically adjudicated the merits of the notice question against him. If it were important to our decision, we might comment on the inconsistency of this action with subsequent developments in the same court.

On October 29, 1937, the learned District Judge filed "findings of fact, conclusions of law, and opinion". A dismissal of the petition was decreed. The learned trial Judge said there had been no execution against Ress and declared that it "followed therefore" and "followed also" that defendant-appellee Koch had no right and there was no "actual controversy".

On December 8, 1937, petitioner-appellant, dissatisfied with the action of the learned trial Judge, filed a petition for reargument. In it, petitioner-appellant attacked the holding with respect to controversy and asserted that the vigorous nature of the dispute between the parties was evidenced by the (1) unsatisfied execution, January Term 1936, (2) the writ of execution attachment, November 5, 1937, and (3) the action of assumpsit, November 12, 1937.

On December 18, 1937, an answer to the petition for reargument was filed. This answer denied petitioner's right to include in the petition a fact (the unsatisfied execution) which was known to the petitioner-appellant at the time it filed its original petition. The learned trial court seems to have disagreed with this view because on March 9, 1938, it permitted an amendment to show the conceded fact of the unsatisfied execution.

On April 8, 1938, there seems to have been some further argument before the learned trial Judge. He again expressed doubt as to the existence of a "controversy". To further assist in removing this doubt, petitioner-appellant offered a further amendment setting forth the demand by Mr. Leonard Morris, defendant-appellee's counsel, for payment of the judgment of execution, the failure to satisfy which has been several times referred to. This offer to

amend was rejected on April 29, 1938, and on the same day an "order, findings of fact, conclusions of law and opinion" were filed by the learned District Judge. The court below reasserted its previous view with respect to the absence of an "actual controversy" and included, apparently as part of that contention, the fact of the filing of the writ of attachment execution by the defendant-appellee in the Common Pleas Court of Allegheny County, naming the plaintiff as garnishee.

This tedious recital of minutiæ has been necessary for a proper appreciation of the conclusions we wish to draw. We are shocked by the expensive futility of the whole proceeding. Four years have been consumed in the prosecution of a claim valued by the plaintiff-appellant at $500 and by a sheriff's jury (an ex parte hearing) at $3,359.75. The parties have been and are involved in three actions in the Common Pleas Court of Pennsylvania, one in the corresponding Court of Connecticut, and this action in the Federal District Court and the Circuit Court of Appeals. We are constrained to remand the case for trial before a jury in the District Court. If the parties feel aggrieved by whatever happens there, we may reasonably expect to see them here again. We do not think it an exaggeration to suggest that at the end of a five years' struggle the expenses of litigation will have consumed everything, leaving Miss Koch nothing. Several ways of avoiding this absurdity occur to us; one very obvious one, an insistence by defendant-appellee's counsel upon the appearance of Ress, her automobile host. In that connection, one might observe that the latter received all papers left at his "place of abode", except the vital one upon which the default judgment was secured.

. It is perhaps the skepticism implicit in our last sentence which has led to the enactment of automobile guest statutes in at least twenty-one states. The Connecticut statute has been held constitutional by the United States Supreme Court in the case of Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221, 65 A.L.R. 939, the learned judge writing the opinion, saying: "We cannot assume that there are no evils to be corrected or permissible social objects to be gained by the present statute. We are not unaware of the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation." Silver v. Silver, 280 U.S. 117, 122, 123, 50 S.Ct. 57, 58, 74 L.Ed. 221, 65 A.L.R. 939. This case has been discussed in numerous law notes, 38 Yale Law Journal 267; 9 Boston University Law Review 31; 30 Columbia University Law Review 258; 16 Virginia Law Review 385; 14 Minnesota Law Review 412; 28 Michigan Law Review 928-9; 12 A.L.R. 57; 19 A.L.R. 1124; 68 A.L.R. 113; 87 A.L.R. 1209; 110 A.L.R. 811, note.

The general principle is cogently commented on by the writer of an article entitled, Changing Rules of Liability in Automobile Accident Litigation: "Beginning approximately in 1920, the volume of host-guest litigation greatly increased. Close friends and relatives seemed to forget the social niceties and without reluctance became opponents in the court room. The courts, however, looking beyond the litigants at bar, discovered that there had also been a great increase in casualty insurance. Realizing the high possibility of collusion in such cases, they began to place restrictions upon the guest's right to recover. * * * It has been said that the obvious purpose of this legislation is to deny recovery to the social guest unless the host has been so neglectful of his safety that the guest owes him no gratitude. However, there is little doubt but that the legislatures have been influenced more by possibilities of collusion between an insured host and his guest than by their dislike for the ungracious guest." Nixon, Changing Rules of Liability in Automobile Accident Litigation, 3 Law & Contemp.Prob. 476, pp. 489, 490.

Another and less drastic method of preventing the evil thus legislated against lies in a sound use of the declaratory judgment. Our examination of the authorities encourages the belief that most courts are increasingly appreciative of that fact. Some of them are collected in a recent opinion by Judge Maris speaking for this court, Maryland Casualty Company v. Consumers Finance Service, Inc., of Pennsylvania et al., 3 Cir., 101 F.2d 514 (decided December 23, 1938). Our disapproval of the action of the learned District Court is based on its failure in this respect. We feel that the dismissal of the petition in the case at bar on the ground of no "actual controversy" is a backward step and expressive of a point of view now happily abandoned.

The initial hostile approach to the declaratory judgment stemmed from a fundamental of American juridical thought. We have been addicts of adversary, and, by the same token, opponents of advisory litigation, Hudson, Advisory Opinions of National (and International) Courts (1924) 37 Harvard Law Review 970–984; Frankfurter, A Note on Advisory Opinions (as to constitutional law) (1924) 37 Harvard Law Review 1002–1009. For a more favorable attitude, see Attorney General for the Province of Ontario v. Attorney General for Canada, 1912, Appeal Cases, 571, The Royal Commission's Report on the Australian Constitution, pages 98 and 255, 24 American Law Review 369. This dislike has been put into a picturesque sentence by a Michigan (the cradle of the opposition, cf. Anway v. Grand Rapids Railway Co., 1920, 211 Mich. 592, 179 N.W. 350, 12 A.L.R. 26) court: "The present act (Declaratory Judgment Act) does not constitute a court a fountain of legal advice to fill the cups of loitering wayfarers." Henze v. Detroit, 1930, 250 Michigan 597, 231 N.W. 51.

As we are interpreting one of our own statutes, U.S.C.A. Title 28, section 400, we are not limited by the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and are not bound to cognizance of the Pennsylvania decisions. Their course illustrates the impress of particular judges upon the problem. In 1925 von Moschzisker, C. J., wrote the opinion for the court in Petition of Kariher, 284 Pa. 455, 131 A. 265, and construed for the first time the enactment in Pennsylvania of the uniform declaratory judgment act, P.L.Pa.1923, p. 840, 12 P.S.Pa. § 831 et seq. That construction was in favor of jurisdiction. Yet in 1933 the court in the case of Nesbitt v. Manufacturers' Casualty Insurance Company, 310 Pa. 374, 165 A. 403, adopted a view irreconcilable with its earlier decision. Later the learned Chief Justice—now ex—drafted and offered an amendment designed to prevent any similar decisions in the future. The cure turned out worse than the disease. In the legislative result the act was made more uncertain and later decisions consequently hostile, Allegheny County v. Equitable Gas Co., 321 Pa. 127, 183 A. 916. Professor Borchard criticized both in an article in 10 Temple Law Quarterly 233, 234-237 and in a note to his, Declaratory Judgments and Insurance Litigation, above cited, said: "Bad draft-

manship and judicial intransigeance have deprived the people of Pennsylvania of a useful remedy." Borchard, Declaratory Judgments and Insurance Litigation, above cited, 5.

This division of opinion as to the proper scope of the declaratory judgment still continues. The line of cleavage is between those who are more attentive to precedents and those who approach the question in the light of the social purpose of litigation. There is evidence that the views of the latter, as expressed in their writings, are being gradually adopted in a majority of the courts. The law review articles are too numerous for citation here. They are collected in 9 Texas Law Review 172, note 16, p. 181. See also 15 N.Y.U. Law Quarterly Review 266, 49 Harvard Law Review 1351. It will be noted that five of them are by Professor Borchard. We quote three typical excerpts:

"It appears, therefore, the refusal to declare rights in case of doubt, as contradistinguished from cases of controversy, constitutes a wholly unnecessary and pernicious curtailment of the declaratory judgment's usefulness." Schroth, The "Actual Controversy" in Declaratory Actions, 20 Cornell Law Quarterly 1, 28.

"It is therefore of exceptional importance to both insurer and insured, if not indeed to the injured person, to know at the earliest possible moment whether the policy covers the loss or not. The liability under the policy and the liability for negligence are indeed two separate transactions. While in general the parties in interest are the same, the company is not usually, except for statute, a party to the negligence action." Borchard, Declaratory Judgments and Insurance Litigation, above cited, 15.

"This is an important step toward the goal of the Declaratory Judgment Acts—an opportunity for peaceable judicial settlement of disputes before blood has been drawn and tempers irretrievably lost." Declaratory Judgments—Federal Act—Jurisdiction as to Rights and Liabilities (comment), 22 Iowa Law Review 762, 763.

Included in that judicial majority is the court which controls us, Aetna Life Insurance Company v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000 (an insurance case as the title indicates and commented on approvingly in various legal periodicals, 50 Harvard Law Review 1317, 25 Georgetown Law Journal 1031, 16 Texas Law Review 220, 22 Iowa

Law Review 762). Although not cited therein, this case dated March 1, 1937, preceded the first opinion of the learned District Court (October 29, 1937) by eight months.

Events subsequent to the filing of this first opinion introduced another question whose determination was necessary to the decision of the case. If we were to judge by their respective paper writings, neither the court below nor counsel appear to have been directly conscious thereof. We say directly conscious because court and counsel recite the facts but relate them to "actual controversy". The fundamental conception of the declaratory judgment is stabilization. So it may be as inconsistent to make action automatic after controversy is found, as to put difficulties in the way of finding controversy. For that reason both students and judges have held that the utilization of the act's machinery in particular cases is within the sound discretion of the courts.

"Issuance of the declaration, it is commonly said, is discretionary with the Court, but this does not imply arbitrariness or caprice, but discretion according to rule and to criteria established by precedent, namely, *whether the judgment will serve a useful purpose and whether it will finally settle the litigation.* If it does, the declaration must generally be issued, the discretion of trial courts being reviewable on appeal. When issued, the declaratory action will be found to have been simpler, more inexpensive and much speedier than an ordinary action. So effective in this respect have several states found the declaratory action that the code provides that actions for declaratory judgments shall be given preference on the calendar." Borchard, The Federal Declaratory Judgments Act, 21 Virginia Law Review, above cited, 49. See also by the same author, Declaratory Judgments and Insurance Litigation, above cited, 16.

"While the federal act does not expressly provide that the granting of declaratory relief shall rest in the court's discretion, this is clearly implied from the fact that it merely gives the court power to grant the remedy without prescribing any of the conditions under which it is to be granted, and it is hardly to be supposed that it was intended that it should be granted as of course in every case where a controversy exists. The Report of the Judiciary Committee of the Senate states that there is a

discretion under the statute 'not to issue the judgment if it will not finally settle the rights of the parties,' and, further, that 'while the procedure is neither distinctly at law or in equity, but sui generis, the Supreme Court could probably at any time make rules under its equity power, if it saw fit.' Senate Report No. 1005, 73d Cong., 2d Sess." Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, above cited, 324. But see Morrison, Availability of the Federal Declaratory Judgment Act for Life Insurance Cases, 23 A.B.A.Jour. 788, 791.

An obvious and principal reason for the exercise of such discretion is found in the existence of a suit whose determination in another court will ultimately decide the liability of the party petitioning for a declaration. If the petition for a declaration is filed after the commencement of such suit, it should be dismissed, 16 American Jurisprudence, sec. 14.

If, however, the order of filing is reversed, we have a close question. Courts have viewed it differently, Aetna Casualty Co. v. Quarles, above cited, Carpenter et al. v. Edmonson, 5 Cir., 92 F.2d 895. Writers also are not agreed, Borchard, Declaratory Judgments and Insurance Litigation, above cited, 18; Morrison, Availability of the Federal Declaratory Judgment Act for Life Insurance Cases, 23 A. B.A.Jour. 788, above cited. These cases are predicated factually upon the exigencies of a normal operation of court calendars and courts. The courts exercising their discretion *against the party seeking* a declaration make the filing of the petition a waste of time and money. One might doubt the fairness of this where the filing of the intervening suit is made possible by the disposal of calendars or filing of opinions.

In the case at bar, however, we have a good deal more than a fortuitous lapse of time. The subsequently intervening suit in the state court was filed during the time required for plaintiff-appellant to meet a legal objection propounded by the court below. This objection was its failure to plead an existing but omitted fact (the unsatisfied execution, January Term 1936) which the court held essential to the presence of an "actual controversy".

As we have intimated, we disagree in point of law with such a technical construction of the word "controversy". Professor Borchard in discussing the very

situation before the trial court has this to say: "Thus, several courts have failed to observe that even a potential claim such as the probable claim of an injured person against the insured and the insurance company, is sufficient to cause apprehension and jeopardy and thus to warrant the institution of an action for a declaration of non-liability. Such a claim may be contingent, in the sense that it has not yet been brought, but human experience indicates that it is so likely to be brought as to justify making the injured person a party defendant to an action for a declaration that the plaintiff company is not liable under the policy. District Judge Ragon therefore in United States Fidelity and Guaranty Co. v. Pierson, D.C., 21 F.Supp. 678, and Judge Lummus of Massachusetts in Merchants Mutual Casualty Co. v. Leone, Mass., 9 N.E.2d 552, are believed to be in error in assuming that the issue between the company and the injured person is not ripe for adjudication because no judgment has yet been obtained by or against the insured or because there is only a 'contingent future possibility of disputes', or because, as intimated in American Motorists Insurance Co. v. Busch, D. C., 22 F.Supp. 72, no suit has yet been brought. This is to defeat one of the main purposes of the declaratory judgment, namely, to remove clouds from legal relations before they have become completed attacks or 'disputes already ripened'. If there is a human probability that danger or jeopardy or prejudice impends fom a certain quarter, a sufficient legal interest has been created to warrant a removal of the danger or threat. Naturally, some judgment is required to determine whether such danger is hypothetical or imaginary only or whether it is actual and material. It would seem that the probable claims of an injured person under the usual casualty policy can never be deemed merely hypothetical or insufficiently ripe for an adjudication of the question of insurer's liability." Declaratory Judgments and Insurance Litigation, above cited, 6.

That being so, plaintiff-appellant should not be made to suffer the consequences of a lapse of time occasioned, not by any mistake of law on its part, but rather by its attempt to cure an erroneous ruling of the court denying the relief it sought.

 Counsel for plaintiff-appellant, possibly because of the exhausting delays in this litigation has reversed his original position with respect to trial by a jury. As much as we might like, as a practical matter, to agree with him, the law is, as we have pointed out, otherwise. We must, therefore, remand the case to the District Court for the Western District of Pennsylvania for trial by a jury therein.

The order of the court dismissing the plaintiff's petition for declaratory judgment as to Flora Koch, defendant, is reversed and the case remanded with direction to proceed in accordance with this opinion.