**WESTERN SUPPLIES CO. et al. v. FREEMAN et al.**

No. 7921.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1940.

Lawrence C. Kingsland, of St. Louis, Mo. (Murray, Sackhoff, Zugelter & Paddack, of Cincinnati, Ohio, and Edmund C. Rogers, of St. Louis, Mo., on the brief), for appellants.

Marston Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, on the brief) for appellees.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

This is an appeal from an order dismissing appellants' bill praying for the cancellation of a contract with appellees and for other relief under the Federal Declaratory Judgment Act, 28 U.S.Code, § 400, 28 U.S.C.A. § 400, and upon general principles of equity. Diversity of citizenship was alleged as the basis of the District Court's jurisdiction.

Appellee Freeman was the owner of U. S. Letters Patent, No. 1,681,033, issued August 14, 1928, directed to a machine and dies for use in making perforations in shoe uppers. The machine has a base to receive the cutting die and a pressing member reciprocable above the die. The material is laid over the

die, and the pressing member is lowered, forcing the material down on the cutting edges in such wise that it becomes perforated. This machine purports to differ from the prior art in being applicable to uppers which have been sewed together, front, sides and rear, so that they are no longer flat but conform in a general way to the contour of the last about which they are later to be accurately shaped.

The cutting die is located on a support, or anvil, elevated above the bed of the machine so that the particular part to be worked upon can be laid flat on the die with the remaining parts draped down about the sides of the elevated die, or anvil. The machine phase of the patent makes it possible to operate upon a non-planar piece of leather on a planar table without its buckling.

In addition to the machine claims, Freeman's patent purported to cover a particular die structure for use on this type of perforating machine.

On January 1, 1929, Freeman entered into a contract with appellants in which he granted them a license to manufacture dies under his patent and sell them under limited conditions in a restricted territory. In consideration of this grant, appellants agreed to pay royalties, to be determined at stated times, and covenanted that, during the term of the license, they would not make machines "falling within the monopoly of" Freeman's patent. They also agreed that they would not contest the validity of the patent.

Subsequently, appellants produced a machine designed to work on closed uppers, known as the Model T machine, which they believed did not come within the monopoly of the Freeman patent. Appellees thought otherwise, however, and brought suit in the United States District Court in St. Louis for specific performance of appellant's covenant not to make machines infringing their patent, accusing the Model T machine. The District Court dismissed appellees' bill but, in July, 1933, its order was reversed by the Circuit Court of Appeals for the Eighth Circuit, and an accounting was ordered. Freeman et al. v. Altvater et al., 66 F.2d 506.

In December, 1935, appellees brought another suit in the District Court in St. Louis, seeking specific performance of appellants' promise to pay royalties and charging therein that certain dies manufactured and sold by appellants were within the monopoly of the Freeman patent. This suit, though begun over four years ago, is still in the pleading stage.

Appellants allege that, after the Eighth Circuit Court of Appeals held that the Model T machine infringed the machine claims of appellees' patent, and before appellees' second suit was filed, appellees filed a conventional infringement suit in the United States District Court in Massachusetts against the Premier Machine Company, alleging infringement of twenty-six claims of the Freeman patent, some of which related to its machine phase and others to its die phase. 11 F.Supp. 761. That suit is alleged to have eventuated in a decision in June, 1936, by the United States Circuit Court of Appeals for the First Circuit, which unequivocally invalidated twenty-three of the twenty-six claims sued on. Premier Machine Co. v. Freeman, 84 F.2d 425. The claims alleged to have been thus invalidated are said to have included every claim relating to the machine phase of the Freeman patent, and the three claims upheld, each relating to its die phase, to have been strictly limited to the Freeman die with its mask.

Following the First Circuit decision, appellants allege that Freeman entered a formal disclaimer in the U. S. Patent Office of the twenty-three invalidated claims and, without appellants' knowledge, applied for a reissue of Patent No. 1,681,033. In filing for said reissue, it is alleged that Freeman necessarily made profert of the patent under which appellants were licensed and that later, on December 8, 1936, he actually surrendered it, upon the issuance of two reissue patents, Nos. 20,202 and 20,203, the former being directed exclusively to the die with the mask,—and therefore to the die phase of the original patent under which appellants were licensed,—and the latter exclusively to the machine phase of the original patent upon which appellants had covenanted not to trespass. As soon as Patent No. 20,203 was issued, appellees filed a supplemental pleading in the first St. Louis suit, in which they gave notice of the reissue and asserted that it entitled them to a continuance of the injunction granted therein; and, in like manner, they have sought to substitute Patent No. 20,202, as the basis for their claim in the second St. Louis suit.

Appellants now claim that Patent No. 20,202 is invalid. They say that it contains claims not distinguishable from the die claims declared invalid in the Premier case and later disclaimed, and that Freeman has

made an effort to repossess himself of subject matter adjudicated to be public property and positively disclaimed by him.

Appellants also contend that reissue Patent No. 20,203, which includes the machine claims of the original patent, is invalid. They aver that it carries over the claims adjudicated valid in the first St. Louis suit, which Freeman asserted in the Premier case to be even broader in scope than the claims invalidated by the Premier decision, and they also assert that it includes two new types of claims for which there is no basis in the original patent.

The sum and substance of appellants' contention is that Freeman's surrender of the original patent, upon which their contract was based, terminated the contract. But appellants say they have built up a business in good faith, under the license granted them, that has required large investments; that without a license they are subject to an infringement suit by Freeman and the possibility of an injunction and great expense; that to cease business is also to suffer great loss; that they need the aid of equity to determine how they may operate their business. Efforts by the parties to adjust their relations having been fruitless, appellants assert that they are entitled to a decree by the District Court adjudicating their rights. They do not assert that they cannot obtain all the relief they here seek in the St. Louis suits, but say only that it seemed entirely possible that the Court would not care to reopen the first St. Louis suit to determine a status not existing at the time of its decision, and it also seemed possible that the Court would not care to broaden the issues already presented in the second St. Louis suit.

Appellees moved a dismissal of the bill here on two grounds: First, the bill shows that there are no justiciable controversies pending between the parties; and second, if there are such controversies, they are pending before duly constituted courts, by which they have been or will be determined.

The District Court was of the opinion that no actual controversy was stated and dismissed the bill. Assuming the existence of a controversy, however, the Court was of the opinion that appellants should assert their claims in the St. Louis cases, it having no power to review judgments already rendered therein.

■ We are of the opinion that the District Court did not err in dismissing the bill.

We do not overlook the fact that appellants' breach of their covenant not to contest the validity of the patent might enable appellees to declare the contract at an end; but to raise the question whether Freeman's disclaimer has not, by terminating the original patent, terminated the contract cannot, we think, be regarded as a breach of appellants' covenant not to contest the validity of the original patent. At any rate, the same view must be taken whether the question is raised here or in the St. Louis suits.

If a petition to vacate the injunction were filed in the first St. Louis suit, we see no reason to doubt that the District Court would decide the effect of the disclaimer of the original machine claims, for the infringement of which its permanent injunction has issued. The validity of reissue Patent No. 20,203, which appellees have already sought to substitute for the original patent, would then necessarily be involved.

The same is true in the pending second St. Louis suit, in which appellees have attempted to substitute reissue Patent No. 20,202 for the die claims of the original patent. Even if appellants' die is guilty as accused, they can raise the question in that suit as to how long they must pay royalties, and the Court can hardly avoid deciding it. Their duty derives from their contract with appellees and ceases when it comes to an end. Appellants assert that the contract was terminated when the original patent was disclaimed, and they contend that reissue Patent No. 20,202 does not continue the life of the die claims of the original patent and their duty to pay royalties under the contract. The second St. Louis case, we think, definitely raises or can be made to raise, every question that is presented here.

■ We are of the opinion that a suit may not be maintained under the Declaratory Judgment Act when another suit between the same parties, involving the same subject matter, is pending in another court of competent jurisdiction and the parties are thereby enabled to procure a full and immediate adjudication of their rights.

In Aetna Casualty & Surety Co. v. Yeatts, 3 Cir., 99 F.2d 665, 669, the Court said: "It is well established that the benefits of the statute should not be extended unless there is an actual present controversy between the parties, and even then the court should not decide the disputed question if the result would be merely to anticipate the trial of an issue involved in a pending case or to

determine the validity of a defense which could be tried equally well therein or to try a controversy piecemeal without complete decision of the matters in dispute." See also Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Carpenter v. Edmonson, 5 Cir., 92 F.2d 895; United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288; Maryland Casualty Co. v. Consumers Finance Service, Inc., of Pennsylvania, 3 Cir., 101 F.2d 514.

Authorities are ample that the granting of relief under the Declaratory Judgment Act is within the sound discretion of the District Court. Aetna Casualty & Surety Co. v. Quarles, supra; Maryland Casualty Co. v. Consumers Finance Service, Inc., supra; United States Fidelity & Guaranty Co. v. Koch, supra; American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613.

That discretion may be abused. See Maryland Casualty Co. v. Consumers Finance Service, Inc., supra. But we have seen no case which suggests that dismissal of a bill under the circumstances here presented would be error.

The decision in Employers' Liability Assurance Corp. v. Ryan et al., 6 Cir., 109 F. 2d 690, this day decided, is not at variance with the conclusion reached herein. In that case, no other proceeding was pending between the parties thereto, when the bill for declaratory judgment was filed, in which the same questions were involved.

The order of the District Court is affirmed.