C. VAN DER LELY N.V., Plaintiff,

v.

F.lli MASCHIO S.n.c., et al., Defendants.

No. C–2–78–565.

United States District Court, S.D. Ohio, E.D.

April 20, 1982.

Charles C. Warner, Porter, Wright, Morris & Arthur, Columbus, Ohio, Kenneth E. Payne, Finnegan, Henderson, Farabow & Garret, Washington, D.C., for plaintiff.

Robert E. Stebens, Mahoney & Stebens, Columbus, Ohio, for defendants.

MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiff, C. Van Der Lely N.V., originally brought this action alleging that defendant, F.lli Maschio S.n.c., had infringed eight of the plaintiff's patents. Defendant denied any infringement and counterclaimed

seeking a declaratory judgment that each of the plaintiff's patents set forth in the complaint is invalid. The jurisdiction of the Court is invoked under 28 U.S.C. § 1338(a) and 28 U.S.C. §§ 2201 and 2202.

This case is now before the Court on the plaintiff's motion to amend the pleadings and to dismiss certain claims and counterclaims. Specifically, plaintiff seeks to amend its complaint pursuant to Fed.R. Civ.P. 15(a) in order to dismiss, with prejudice, all claims that defendant has infringed U.S. Patent Nos. 3,841,411; 3,899,030; 3,809,166, and 3,939,918,[1] because discovery has disclosed that the defendant is not now infringing these patents and has no future intention to manufacture, use or sell machines which infringe these patents. Plaintiff also seeks to have the defendant's counterclaims relating to these particular patents dismissed, without prejudice, because there is presently no controversy involving these patents.

## I. DISCUSSION

### A. FACTUAL BACKGROUND OF PLAINTIFF'S MOTION

On June 16, 1978, plaintiff, C. Van Der Lely N.V. (hereinafter "Lely"), a Holland corporation engaged in the manufacture and sale of vertical rotary harrows, filed its complaint in this Court against F.lli Maschio S.n.c. (hereinafter "Maschio"), an Italian corporation,[2] claiming that Maschio's sale of its harrows in the United States infringed eight of Lely's patents.[3] On September 27, 1978, Maschio filed its Answer and Counterclaim, denying any infringement and seeking by its counterclaim a declaratory judgment that each of plaintiff's eight patents is invalid and unenforceable. On October 16, 1978, Lely filed its reply to the counterclaim, asserting the validity of each of the patents and reasserting its claim that each of the eight patents had been infringed by Maschio.

There is no dispute that this case involves only three of Maschio's models of its harrows, Model T, Model HB and Model HM, which Maschio has sold in the United States. There is also no dispute that Lely, at the time its complaint was filed, believed that Maschio was manufacturing and selling all three models in the United States, but subsequently learned through the course of discovery that the Model T is no longer available in the United States. Furthermore, Lely concluded from its discovery that the Maschio HB and HM models do not infringe four of the eight patents referred to in Lely's original complaint. (Defendant's statement of facts in its memorandum contra plaintiff's motion to amend.) According to Lely, and not disputed by Maschio, only a limited number of Maschio's Model T harrows were ever distributed in the United States, and Maschio "no longer manufactures the Model T machine, is not now selling or offering to sell Model T machines, and has no intention to manufacture, use or sell a Model T-type machine in the future." (Plaintiff's memorandum in support of its motion to amend at 2.) With respect to the Models HB and HM, Lely concluded that these models do not infringe four of the eight patents and that "plaintiff has no reason to believe that Maschio has any intention to alter the design of the HB and HM models to a design that would infringe the '411, '030, '166 or '918 patents or to design, manufacture, use or sell any machines which would infringe the '411, '030, '166 or '918 patents." (Plaintiff's memorandum, supra at 2.)

As a result of the information obtained and conclusions reached following discovery, Lely proposed to Maschio in November, 1979 that the parties agree that Lely

---

1. The patents hereafter will be referred to as patent nos. 411 (3,841,411), 030 (3,899,030), 166 (3,809,166), and 918 (3,939,918).

2. Other original defendants included Sullivan Equipment Co., Inc. and Central States Distributors. On October 21, 1981, defendants Sullivan Equipment Co., Inc. and Central States

Distributors were dismissed with prejudice from this action.

3. These patents include United States Letter and Patent Nos. 3,616,862; 3,774,689; 3,783,948; 3,809,166; 3,841,411; 3,899,030; 3,930,542; and 3,939,918.

could file an amended complaint, eliminating its claims based on the four patents referred to above, and that Maschio would file an amended counterclaim eliminating its claims that these four patents are invalid. Efforts to reach any agreement regarding amended pleadings were fruitless, however, and on September 22, 1981, Lely filed the motion now under consideration.

## B. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

The defendant seeks to characterize the plaintiff's motion to amend the complaint as a motion to voluntarily dismiss certain claims pursuant to Fed.R.Civ.P. 41(a)(2). However, the plaintiff seeks to "dismiss" only certain claims or issues and not the entire action. "[W]hile often dubbed a Rule 41(a) voluntary dismissal, the procedure [being followed] . . . is more properly viewed as a Rule 15 amendment to the complaint." *Management Investors v. United Mine Workers,* 610 F.2d 384, 394 (6th Cir.1979) (citations and footnote omitted). As explained in 5 Moore's Federal Practice ¶ 41.06-1, at 41–92–94 (2d ed. 1981) (footnotes omitted):

> The language of both paragraphs (1) and (2) of Rule 41(a) speaks of the dismissal of an action. Consequently, some problem arises where a voluntary dismissal is sought of fewer than all the claims or all the parties involved in the action, i.e., a fragment of the action. The problem, though, is more technical than substantial.
>
> Where a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants the problem may technically be regarded as one of amendment that is governed by Rule 15. Under Rule 15(a) plaintiff may amend his complaint once as a matter of course at any time before the answer is served. Otherwise he may amend his complaint only by leave of court or by written consent of the defendant. Where he seeks leave of court he invokes the district court's discretion and while leave is to be freely given when justice so requires, the court may deny leave, or impose conditions upon leave to amend to eliminate an issue or claims as it would upon a voluntary dismissal under Rule 41(a)(2).

But since the district court's discretion is involved when leave of court is required, whether plaintiff's motion is made under Rule 15 or under Rule 41(a)(2), the choice of rules is largely a technical one. But technically speaking, subdivision (a) of Rule 41 does not include dismissal of less than all the claims against any particular defendant.

. . . . .

Thus, an amendment under Rule 15(a) is technically the proper procedure, rather than voluntary dismissal under Rule 41(a).

*See also Smith, Kline & French Laboratories v. A.H. Robins Co.,* 61 F.R.D. 24 (E.D. Pa.1973); *Fastener Corp. v. Spotnails, Inc.,* 291 F.Supp. 974 (N.D.Ill.1968).

In *Smith, Kline & French Laboratories v. A.H. Robins Co., supra,* the court extensively discussed the applicability of Fed.R.Civ.P. 15(a) and 41(a) to the type of situation presently before this Court.

> We are therefore called upon to determine if the SK & F motion to withdraw the present Count II has been properly brought under Rule 15(a), or whether it must be brought under Rule 41(a)(2). The initial issue before us is whether Rule 41 is applicable to the present case. Both Rules 41(a)(1) and 41(a)(2) apply by their terms to dismissal of an "action." The reference to an "action" in Rule 41(a) contrasts with Rule 41(b), which provides that "a defendant may move for dismissal of an action or of any claim against him." (Emphasis supplied). The language of Rule 41(b) is broader and more comprehensive than the parallel language in Rule 41(a). 5 Moore's Federal Practice ¶¶ 41.06-1, 41–11[2], 41.12, 41.13[1]. While the notes of the Advisory Committee do not discuss the question, it is reasonable to assume that the drafters of Rule 41 would have included similar language in Rule 41(a), had they intended to

have that rule cover dismissal by the plaintiff of less than all the claims against any defendant.

The two dismissal rule itself, upon which Robins relies, makes a distinction between an "action" and a "claim."

Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim. Rule 41(a)(1).

The interpretation of Rule 41 which is urged by Robins would require the Court to construe the term "action" as though it were the equivalent of the traditional concept of a "cause of action," a phrase which does not appear in the Federal Rules of Civil Procedure. 2 Moore's Federal Practice ¶ 2.06[2].

The drafters of the Federal Rules chose instead the concept of a "claim for relief" (Rule 8(a)), or simply a "claim," which has been defined as "the aggregate of operative facts which give rise to a right enforceable in the courts." *Original Ballet Russe, Limited v. Ballet Theatre, Inc., et al.*, 133 F.2d 187 (2d Cir.1943). See *Taylerson v. American Airlines, Inc.*, 183 F.Supp. 882 (S.D.N.Y.1960).

A "Civil Action," or an "action," on the other hand, is the sum total of the claims which the parties assert against each other. Once an action is commenced by the filing of a complaint, all subsequent proceedings are part of the action thus commenced. *Stahl v. Paramount Pictures*, 167 F.Supp. 836 (S.D.N.Y.1958).

. . . . .

The Federal Rules and the cases which construe them thus make a clear distinction between a "claim" and an "action." Therefore, when Rule 41(a) refers to dismissal of an "action," there is no reason to suppose that the term is intended to include the separate claims which make up an action. When dismissal of a claim is intended, as in Rule 41(b), that concept is spelled out in plain language.

61 F.R.D. at 28–29.

■ In light of the Sixth Circuit's opinion in *Management Investors v. United Mine Workers, supra,* and in light of the reasoning of *Smith, Kline & French Laboratories v. A.H. Robins Co., supra,* this Court holds that the plaintiff's motion is properly brought under Fed.R.Civ.P. 15(a) and that the provisions of Fed.R.Civ.P. 41(a) have no application to the instant proceedings. Accordingly, this Court must proceed to determine whether the plaintiff's motion to amend pursuant to Fed.R.Civ.P. 15(a) should be granted.

Fed.R.Civ.P. 15(a) provides in pertinent part:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend his pleading only by leave of court...; and leave shall be freely given when justice so requires.

■ Allowance of amendments lies in the discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). *See also Estes v. Kentucky Utilities Co.,* 636 F.2d 1131 (6th Cir.1980); 3 Moore's Federal Practice ¶ 15.08[4] (2d ed. 1980). In deciding whether to grant this motion, this Court should take into account any prejudice that may result from granting leave to amend, and if necessary, weigh this against any prejudice to the moving party if the amendment were not permitted. "In the absence of any apparent or declared reason—such as undue delay, bad faith..., undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also Seals v. Quarterly Cty. Court of Madison Cty.,* 526 F.2d 216 (6th Cir.1975); *Estes v. Kentucky Utilities Co., supra.*

There is no justifiable reason to deny plaintiff's motion to amend its complaint. As the court in a similar case stated:

the Court welcomes the simplification of some issues, and the elimination of others, made possible by plaintiff's decision not to pursue his claims under the 3,141,171 patent.

*Fastener Corp. v. Spotnails, supra* at 976. In the present case there was admittedly a long delay in the filing of the motion to amend, but this was certainly due in part to the efforts of counsel to negotiate an agreement concerning the filing of amended pleadings so that a formal motion would not be necessary. Defendant was aware as early as November, 1979 of plaintiff's willingness to substantially reduce the issues in this case as a result of plaintiff's discovery, and there is no indication that the parties have expended large amounts of time or money in either substantiating or defending the claims which plaintiff has long sought to eliminate from its complaint. The defendant certainly cannot be prejudiced by the elimination of a number of plaintiff's claims of patent infringement when, as plaintiff has proposed, those claims are to be dismissed with prejudice. Defendant will unquestionably save a great deal of expense by this narrowing of the issues in this case and by the reduction of the subject patents from eight to four. Indeed, it is apparent that defendant's opposition to plaintiff's motion is aimed not at the elimination of the infringement claims concerning the four patents in question, but at the portion of plaintiff's motion which seeks to eliminate from defendant's counterclaim the defendant's claims regarding the alleged invalidity of these same four patents. It is plaintiff's position that if the Court permits an amended complaint to be filed eliminating any issues involving these patents from the plaintiff's claims, then there is no longer any case or controversy concerning these patents upon which jurisdiction could be based for a declaratory judgment of their validity or invalidity. Defendant's position is that the elimination of the claims from plaintiff's complaint does not eliminate the controversy over these patents and that defendant should still be able to assert its counterclaim challenging the validity of these patents.

■ From a procedural viewpoint, and taking first things first, the Court concludes that plaintiff's motion for leave to file its amended complaint is obviously well taken and is hereby granted. Until the amended complaint is actually filed, however, and its exact claims set forth, it is the Court's belief that it would be premature to formally rule on that portion of plaintiff's motion dealing with the counterclaim to the original complaint. The defendant will be directed, upon the filing of plaintiff's amended complaint, to file its amended answer and counterclaim in response to the amended complaint and plaintiff may then move or reply to the amended answer and counterclaim. In this manner, the pleadings will be more precisely responsive, and the question of any viability of claims in the anticipated but yet unfiled amended counterclaim may become a moot question. In fairness to the parties, however, and because both parties have extensively briefed the question of whether, if plaintiff's claims regarding the four patents are dismissed from this lawsuit, defendant will still be able to assert its claim of the patents' invalidity, the Court expresses its views of this question in the remaining portion of this memorandum.

C. EXISTENCE OF A CASE OR CONTROVERSY TO SUPPORT JURISDICTION OVER A COUNTERCLAIM SEEKING A DECLARATORY JUDGMENT THAT PATENTS, NO LONGER AT ISSUE IN PLAINTIFF'S CASE, ARE INVALID.

It is obvious that if a plaintiff, as in the present case, determines as a result of its discovery that certain patents originally believed to have been infringed were not infringed and thus eliminates them from plaintiff's claims, a serious question exists as to whether there is any basis upon which the Court could or should proceed to adjudicate the issue of alleged invalidity of those patents as raised by a counterclaim seeking a declaratory judgment.

The parties do not question that the Declaratory Judgment Act (The Act) permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. The requirement of The Act that there be an "actual controversy" is the same as the "case or controversy" requirement of Article III of the United States Constitution. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937); *Societe de Conditionnement v. Hunter Engineering,* 655 F.2d 938 (9th Cir. 1981).

The Supreme Court has on numerous occasions discussed the requirement that a case or controversy exist before judicial power is exercised. In *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) the Court stated:

> The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy. As the Court noted in *North Carolina v. Rice,* 404 U.S. 244, 246 [92 S.Ct. 402, 404, 30 L.Ed.2d 413] (1971), a federal court has neither the power to render advisory opinions nor "to decide questions that cannot affect the rights of litigants in the case before them." Its judgments must resolve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Ibid.,* quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 [57 S.Ct. 461, 464, 81 L.Ed. 617] (1937). As the Court noted last term, in an opinion by Mr. Justice Brennan, *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10 [94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505] (1974): "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. See, *e.g., Roe v. Wade,* 410 U.S. [113], 125 [93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973)]; *SEC v. Medical Comm. for Human Rights,* 404 U.S. 403 [92 S.Ct. 577, 30 L.Ed.2d 560] (1972); *United States v. Munsingwear, Inc.,* 340 U.S. 36 [71 S.Ct. 104, 95 L.Ed.

36] (1950)." In *Maryland Casualty Co. v. Pacific Co.,* 312 U.S. 270 [61 S.Ct. 510, 85 L.Ed. 826] (1941), this Court, noting the difficulty in fashioning a precise test of universal application for determining whether a request for declaratory relief had become moot, held that, basically, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.,* at 273 [61 S.Ct. at 512] (emphasis supplied).

*Id.* at 401–02, 95 S.Ct. at 2334.

The Ninth Circuit Court of Appeals has carefully considered the standard for making a determination of whether a particular patent action involves a case or controversy within the meaning of Article III.

> A better way to conceptualize the case or controversy standard is to focus on the declaratory judgment plaintiff. An action for a declaratory judgment that a patent is invalid, or that the plaintiff is not infringing, is a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product.

*Societe de Conditionnement, supra,* at 944 (citations omitted).

Both parties have cited and discussed at some length the case of *Lackner v. Quehl Sign Co.,* 145 F.2d 932 (6th Cir.1944). In *Lackner,* the plaintiff, a licensee of a patent for a number of states, filed a complaint charging the defendant with infringement. The defendant filed a counterclaim seeking a declaratory judgment that the patent at issue was invalid. The defendant then proceeded to take depositions in Illinois, Pennsylvania and Ohio, "mainly on the question of validity." When the case came on for hearing, plaintiff in open court offered the defendant "a free paid-up license" under the patent at issue, forgiveness of all past infringement and consented to the dismissal of the complaint and counterclaim with

prejudice. The defendant refused to accept the plaintiff's offer and the trial court later overruled a motion to dismiss the action. At the final hearing, plaintiff offered no evidence, contending that the court no longer had jurisdiction because no controversy existed between the parties. The defendant proceeded to present its evidence on the issue of invalidity and the court entered judgment for defendant, finding the patent void for want of invention. The Court of Appeals held that the District Court had jurisdiction and did not err in proceeding to determine the issue of the patent's validity raised by the counterclaim.

The *Lackner* decision is clearly distinguishable from the present case. Although not specifically stated in the decision, it is apparent that the defendant in that case was continuing to use the product that was the subject of the patent set forth in the plaintiff's complaint. This is clear from plaintiff's offer to give the defendant a "free paid-up license," as well as a willingness to forgive the defendant of all past infringement. In short, in *Lackner*, plaintiff contended that defendant was *still infringing* plaintiff's patent (there being only one patent in question) but offered to settle the matter by making defendant a licensee, an offer which defendant rejected. The underlying dispute and controversy—whether defendant's continued use of the product was in fact infringing plaintiff's patent and the related issue of whether the patent itself was valid—thus remained to be tried. This important point was emphasized by the Court of Appeals which pointed out, in distinguishing *Larson v. General Motors Corp.*, 134 F.2d 450 (2d Cir.1943), that in the *Larson* case the plaintiffs had admitted noninfringement whereas in the *Lackner* case the plaintiff did *not* admit noninfringement. Under those circumstances, the dispute over the patent remained and a sufficient controversy existed to permit the Court to retain jurisdiction over the counterclaim.

Having jurisdiction over the counterclaim, the Court of Appeals held that the lower court did not abuse its discretion in adjudicating the issue of validity and in rendering a declaratory judgment. In addition, the Court of Appeals held that the *Lackner* case was "squarely controlled by Rule 41(a)(2) of the Federal Rules of Civil Procedure..." which prevented a dismissal of the action over the objection of the defendant counterclaimant.

 Unlike *Lackner*, there is no continuing, viable dispute or controversy regarding plaintiff's original claims based on the four patents in question, '411, '030, '166 and '918. Plaintiff, as a result of its discovery, now concedes and has admitted on the record that Maschio Models HB and HM do *not* infringe on those patents. The Maschio Model T is no longer being manufactured and there is no indication that it will ever be manufactured again. With respect to the Model T, although not conceding that this model did not at one time infringe on the four patents in question, plaintiff is willing to dismiss such a claim, together with its claim of infringement on these four patents by the Models HB and HM, with prejudice, leaving for adjudication only the question of whether Maschio's Models HB, HM and T infringed the remaining four patents claimed by plaintiff. Defendant, therefore, has been freed of any claims that its Models HB and HM or its Model T infringe upon patents '411, '030, '166 and '918. Defendant has not expressed any intention to change its Models HB and HM or to resume production of the Model T or to do anything that would in any way resurrect plaintiff's original claims involving these four patents. Under the circumstances of this particular case, therefore, unlike *Lackner*, there is *no* claim that the defendant is continuing to infringe these four patents. There is consequently no dispute or controversy regarding them which needs to be adjudicated or should be adjudicated at this time. Hypothetically, it is possible that defendant, sometime in the future, may produce and sell in the United States different models which plaintiff may conclude infringe these four patents. But this is speculative at best; at the least it is another lawsuit, another day. If such events come to pass, the validity of these

four patents can be put directly at issue at that time, and at that time there would be a case or controversy upon which the court's jurisdiction could properly be based.

Finally, unlike *Lackner,* the case at bar is *not* controlled by Rule 41(a)(2). As noted earlier, plaintiff's motion seeks leave to file an amended complaint under Rule 15(a) in order simply to eliminate certain claims from its complaint. Plaintiff is not seeking, as the plaintiff sought in *Lackner,* a complete dismissal of the action itself. Hence, Rule 41(a)(2) is not applicable to the present case, and defendant's objection to the dismissal of these claims does not have the force of an objection to a dismissal of an action made by a counterclaimant under Rule 41(a)(2).

Applying the real and reasonable apprehension test utilized by the Ninth Circuit and focusing on the defendant at this point in time, this Court feels there would be no concrete controversy between the parties as to these four patents to support any counterclaim for a declaratory judgment of the validity of those patents which the defendant may seek to assert. Whatever controversy existed between the parties concerning the four patents at issue became moot when plaintiff admitted that Models HB and HM do not infringe those patents, forgave any alleged past infringement of those patents by the no longer manufactured Model T and agreed to a dismissal of all of its claims based on those four patents, with prejudice. Thus, insofar as these four patents are concerned, the defendant could not have any "real and reasonable apprehension" that it will be subject to liability to the plaintiff if defendant continues to manufacture the products it is presently manufacturing. *Societe de Conditionnement, supra,* at 944.

The extinguishment of patent infringement claims has been a determining factor in at least two cases which reached the conclusion that no case or controversy existed upon which jurisdiction to render a declaratory judgment could be based. In *Walker Process Equipment, Inc. v. FMC Corp.,* 356 F.2d 449 (7th Cir.1966), the man-

ufacturer of sewage equipment sought a declaratory judgment of the invalidity of a patent. The patent owner had previously sued one of the manufacturer's customers, alleging infringement through the use of the plaintiff's equipment. In the suit against that customer the Fourth Circuit Court of Appeals held that the patent was valid and not infringed. In the manufacturer's later action for a declaratory judgment, the Seventh Circuit Court of Appeals affirmed the dismissal of the manufacturer's action by the district court. The court of appeals rejected the manufacturer's argument that viable charges of infringement existed because of the patent owner's charges against the manufacturer's customer in the prior litigation. The court of appeals stated "[w]hatever infringement charges were made in the... [prior] litigation [with the customer] were resolved, and the controversy between the parties terminated, by the judgment of the court of appeals." *Id.,* at 451. The court of appeals then concluded, "[i]n view of the fact that there are no outstanding charges by FMC of infringement by Walker or Walker's customers, there is no justiciable controversy between the parties." *Id. See also, TRW, Inc. v. Ellipse Corp.,* 495 F.2d 314 (7th Cir. 1974).

In light of the positions of the parties at this stage of the litigation, the Court feels that the defendant could not have a real and reasonable apprehension of liability and that this Court would not have jurisdiction to determine the issue of alleged invalidity of the four patents in question.

## D. DISCRETION TO RENDER DECLARATORY JUDGMENTS

Assuming, *arguendo,* that a case or controversy exists and that this Court, therefore, would have jurisdiction over any counterclaims the defendant may assert for declaratory judgments of patent invalidity, this Court would still have to decide if it should exercise its discretion not to render a declaratory judgment as to the four patents eliminated from plaintiff's original complaint.

A declaratory judgment is a remedy committed to judicial discretion. *A.L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961). Declaratory judgment jurisdiction is discretionary even where a justiciable controversy has been shown to exist. *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207 (7th Cir.1980); *Walker v. Felmont Oil Corp.,* 262 F.2d 163 (6th Cir.), *cert. denied,* 361 U.S. 840, 80 S.Ct. 61, 4 L.Ed.2d 78 (1958); *Western Supplies Co. v. Freeman,* 109 F.2d 693 (6th Cir.1940). A federal court is never under compulsion to exercise its federal declaratory judgment jurisdiction, and a defensive application by a defendant for declaratory relief would be addressed to a district court's discretion. *Perkinson v. Penick,* 456 F.Supp. 1 (E.D. Tenn.1977).

> [T]he mere fact that justiciability is present does not mean that the court must proceed with the declaratory action, for it is well settled that the exercise of declaratory jurisdiction is discretionary. If the court be of the opinion that the action will not serve a useful purpose, or that it is otherwise undesirable, then it should refuse to proceed.

6A Moore's Federal Practice ¶ 57.20 at 57–215–16 (2d ed. 1979). *See, e.g., Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). *Accord Lackner Co. v. Quehl Sign Co.,* 145 F.2d 932 (6th Cir.1944) ("... in the instant case there was no abuse of discretion in adjudicating the question [of patent validity]").

Two principal criteria are generally reviewed in determining whether a court should exercise its discretion to render a declaratory judgment. The two criteria are (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See Gross v. Fox,* 496 F.2d 1153 (3d Cir.1974); *TRW, Inc. v. Ellipse Corp.,* 495 F.2d 314, 322 (7th Cir.1974); *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998 (2d Cir.1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); *Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321 (4th Cir.1937). *See also* 6A Moore's Federal Practice ¶ 57.-08[1] (2d ed. 1979).

Applying these criteria to the circumstances in the present case, the Court feels that, even if it has jurisdiction to render a declaratory judgment concerning the four patents in question, it should properly decline to do so. In the instant case such a declaratory judgment would not serve to clarify any legal relations in issue. Defendant no longer manufactures the Model T and has no plans to resume manufacturing that model of farm machinery, and it is agreed by the parties that the Models HB and HM which the defendant does produce do *not* infringe the four patents in question. To the extent there was ever any uncertainty or insecurity on the part of the defendant regarding these four patents or controversy concerning them, this has been dispelled and put to rest by the agreement that none of the models being produced by defendant today and distributed in the United States infringes upon any of these patents. Plaintiff's claims originally asserted against defendant under these patents in this litigation are being dismissed with prejudice, and defendant has not shown the Court why or for what reason defendant continues to feel that a legitimate, recognized purpose would be served by rendering a judgment declaring these patents to be either valid or invalid.

## II. CONCLUSION

For over two years the plaintiff has offered to amend its complaint to drop its claims of infringement of United States Patent Nos. 3,841,411; 3,899,030; 3,809,166; and 3,939,918. This Court feels that the plaintiff should be permitted to amend its complaint to drop those claims, with prejudice. Accordingly, the plaintiff's request to amend the complaint is GRANTED, provided that plaintiff state in its amended com-

plaint that the prior claims set forth in the original complaint dealing with the four patents in question are dismissed, with prejudice. The plaintiff shall file its amended complaint within ten (10) days of the date of the filing of this order. The defendant shall file its amended answer and any counterclaims to the amended complaint which it seeks to assert within ten (10) days of the filing of the amended complaint. Plaintiff shall move or reply to any counterclaim within ten (10) days of the filing of such counterclaim.

IT IS SO ORDERED.