NATIONAL COUPLING COMPANY,
Inc., Plaintiff-Appellant,

v.

PRESS–SEAL GASKET CORPORATION,
Defendant-Appellee.

No. 14154.

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1963.

Albert L. Jeffers, Fort Wayne, Ind., for appellant.

Robert G. Irish, Fort Wayne, Ind., Harold B. Hood, Indianapolis, Ind., Hood, Gust & Irish, Fort Wayne, Ind., for defendant-appellee.

Before CASTLE, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Plaintiff, National Coupling Company, of Fort Wayne, Indiana, filed a declaratory judgment action against defendant, Press-Seal Gasket Corporation, also of Fort Wayne, in which it asked a declaration that it is not infringing United States Patent Re. 24,799, granted to Joseph E. Miller and owned by Press-Seal, for a gasket and pipe end construction for bell and spigot pipe. Plaintiff also requested the patent be declared invalid. It further claimed damages in the amount of $100,000.

Defendant moved to dismiss, or in the alternative, for summary judgment on the ground that the court lacked jurisdiction. The motion was denied. D.C., 214 F.Supp. 375. Defendant then filed an answer and a counterclaim charging plaintiff with infringement of its patent. At pre-trial the parties agreed to a separate hearing on the question of jurisdiction. The district court then conducted the hearing at which evidence was submitted. Thereafter, the district judge made findings of fact and conclusions of law on the jurisdictional issue and dismissed the complaint and counterclaim.

This appeal presents a question of interpretation of 35 U.S.C. § 271(c).[1]

1. 35 U.S.C. § 271(c) reads:

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of

In its complaint for a declaratory judgment, National Coupling alleged that it manufactures and sells various types of gaskets; that defendant publicly charged in a letter to one of plaintiff's customers, the American-Marietta Company, of Chicago, Illinois, that the invention described and covered by the Miller patent is embodied in the American-Marietta Company's concrete pipe when using plaintiff's gaskets and that the patent is infringed by the use of plaintiff's gaskets with the American-Marietta Company's concrete pipe.[2] National Coupling also alleged that it is not guilty of infringement of the patent.

The jurisdictional question presented at pre-trial arises by reason of defendant's claim (originally embodied in the motion for summary judgment) that no justiciable controversy exists between the parties under the patent laws, and since there is no diversity of citizenship, the district court lacked jurisdiction. The claim of lack of jurisdiction under the patent laws is based on the contention that plaintiff's gasket falls within the exculpatory provisions of Section 271(c). The district judge found, after hearing evidence, that plaintiff's gasket was "a staple article or commodity of commerce suitable for substantial noninfringing use." Upon making that finding, he dismissed the action.

■ The basic question is whether defendant can assert a jurisdictional defense based on Section 271(c) by maintaining that plaintiff's gasket is "a staple article or commodity of commerce suitable for substantial noninfringing use." It should be noted that in the district court plaintiff did not question defendant's efforts to raise this defense and that plaintiff in fact attempted to meet the issue tendered by defendant by submitting counter evidence and argument to show that National Coupling's gasket is not a staple article or commodity of commerce suitable for noninfringing use. Thus, the district judge was led astray from what should have been the threshold question. That question we repeat, if only for sake of clarity and emphasis, is whether a patent owner, after charging contributory infringement, may forestall a judicial determination whether the charged party is in fact contributing to an infringement by making a voir dire claim that the article made or sold by the alleged infringer falls within the excluded class of infringing articles, as defined in Section 271(c).

the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

2. The letter reads in part:

Re: Reissue Patent No. 24,799—Miller—Gasket and Pipe End Construction for Bell and Spigot Pipe.

Our client, Press-Seal Gasket Corporation, * * * the manufacturer of "Press Seal" gaskets for concrete pipe, is the owner of the above reissue patent.

Our client has called to our attention a certain gasket for concrete pipe which is being manufactured by National Coupling Company. * * *

We understand that American Marietta * * * is purchasing these gaskets from National Coupling Company and installing them on two-stepped concrete pipe. * * *

We have advised our client that in our opinion, *the above gasket when installed on concrete pipe * * * and when the joint is completely assembled, constitutes a clear cut infringement of the above reissue patent.* Thus, in our opinion, the contractors who purchase concrete pipe from American Marietta Company with the above referred to gasket assembled thereon and who install such pipe are direct infringers of the above reissue patent. Further it is our opinion that American Marietta Company, by installing the above gaskets on two-stepped pipe, knowing that such pipe is to be assembled into completed joints, is both contributorily infringing and actively inducing infringement of the above reissue patent.

Since we are certain that American Marietta Company does not wish knowingly to violate the patent rights of our client, we feel that American Marietta Company should *immediately cease and desist from further installation of the above gaskets* on concrete pipe of its manufacture. (Emphasis added.)

The very inconsistency implicit in the question would seem to forecast the answer; yet we think an analysis should be undertaken.

Defendant relies on Aralac, Inc. v. Hat Corporation of America, 166 F.2d 286 (3rd Cir. 1948). This was an action by Aralac for declaratory judgment of invalidity of Hat Corporation patents covering a process of making hats. The complaint filed by Aralac alleged that it had for years sold casein fiber to fur felt hat manufacturers who used the fiber as a partial substitute for animal fur in their felting process.

The complaint further alleged that Hat Corporation had communicated to some of Aralac's hat manufacturing customers that the patents in question encompassed the use of casein fibers and that the unauthorized use of such fibers would constitute an infringement of the patented process. Aralac went on to allege that because of Hat Corporation's intimidatory conduct many hat manufacturers reduced their purchase of its product or discontinued their purchases entirely.

The court of appeals affirmed the lower court's dismissal of the complaint, holding that there was no controversy between the parties and that the plaintiff had no right under the patent laws to invoke a suit under the Declaratory Judgment Act.

The appellate court in *Aralac* assumed that casein fibers are a "standard article of commerce capable of various uses." It added that Aralac sold its product to others than hat manufacturers. It then said, "it * * * still is the law that the sale of an article of commerce of ordinary use without relation to any apparatus does not make the manufacturer guilty of contributory infringement if the buyer later makes use of the article in an infringing apparatus." The court concluded, "Where a person is not engaged in possible infringing conduct and with no intention of doing so, he lacks an interest in a controversy to support an action for declaratory judgment relief to test the validity of the patent."

A cursory examination of *Aralac* might indicate a close parallelism to the instant case as well as persuasive logic to sustain the dismissal; but a closer study reveals a vital distinction.

In *Aralac,* the court recognized that notice of infringement to a plaintiff's customer is sufficient basis for a declaratory judgment action. But it went on to say, "In this case however there has never been a charge of infringement made by defendant against plaintiff or any of plaintiff's customers or prospective customers by *notice, threat or suit as to the sale or purchase of casein fiber or against casein fiber as such,* but a claim that the *purchasers of plaintiff's fibers were, by using the process encompassed by defendant's patents, performing an act of infringement.*" (Emphasis added.) Further, "the charges of infringement under defendant's patents have been against a product and a process with which plaintiff has had no connection. The invention covered by the patents is not per se for casein fiber but covers the process of combining such fibers with fur fibers to form hats or hat materials."

Finally, the court said:

Plaintiff has the right to have that which it lawfully produces freely bought and sold without restraint or interference. It is a right which attaches to its product, to a particular thing—as an article of commerce—and it continues only so long as the commodity to which the right applies retains its separate identity. If in the course of trade that commodity is combined with other things in the process of the manufacture of a new commodity, the trade right in the original part as an article of commerce is necessarily gone. So that if other persons become manufacturers on their own behalf, assembling the various elements and uniting them so as to produce hats or hat bodies, a new article, it is manifest plaintiff cannot by reason of its mere right to make and sell, and the fact of its having made and sold casein fibers

to the manufacturers of the new article, satisfy the legal requirement that it has sufficient legal interest in any claim arising under the patent laws, enabling it by declaratory judgment to challenge the validity of the defendant's patent, where no charge of infringement has been made against the product sold by plaintiff but against a process with which plaintiff has had no connection.

\* \* \* \* \* \*

Plaintiff could demand protection of its right to sell the casein fiber it produced. It has no right to demand that others be allowed to practice the patented process in violation of the patent monopoly in order that it might have a market for its fibers.

In contrast to *Aralac*, Press-Seal has charged contributory infringement of its patent by American-Marietta's use of National Coupling's gasket. The import of Press-Seal's letter is that but for the use of National Coupling's gasket there would be no infringement. Thus, the charge of infringement is against National Coupling.

Had there been a trial on the merits, plaintiff, in order to absolve itself of the charge of contributory infringement, might have chosen to attempt a demonstration that its product is a staple article or commodity of commerce suitable for substantial noninfringing use. But that would have been an affirmative defense to the charge of contributory infringement made by Press-Seal against National Coupling. It would have been available *only* to National Coupling as a means of vindication of the charge. It may not be employed by Press-Seal to keep the charge of contributory infringement alive and at the same time immunize itself from a suit that challenges the charge of infringement and the validity of its patent. Both of these issues were invited by Press-Seal when it wrote the letter to American-Marietta.

■ Susceptibility to federal jurisdiction arose at the time the letter was sent, and jurisdiction attached when the declaratory judgment complaint was filed. That jurisdiction cannot be defeated by Press-Seal's attempt to make use of a defense that is available only to National Coupling. If it were otherwise, the intendment of Section 271(c) would be perverted; the exculpatory provisions of the statute would be used, not as intended by the statute, to protect suppliers who sell staple articles of commerce and do not actively induce infringement, but to shield a patent owner from being subjected to a judicial proceeding to determine whether his charges of contributory infringement are well-founded, whether his patent is valid, and perhaps, whether he has misused the patent by broadening coverage to include unpatented material.

Girdler Corporation v. E. I. Du Pont De Nemours & Co., 56 F.Supp. 871 (D.C. Del.1944), is significant although the facts were different from the case at bar and Section 271(c) was not involved. In that case du Pont, after charging Girdler with contributory infringement, withdrew its charges by asserting that an application of the decision of the Supreme Court in Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944) (decided after the charges were made), would absolve Girdler of any charges of contributory infringement. Du Pont sought a dismissal of a declaratory judgment action by Girdler. The district court denied the request.

In the course of his opinion, Judge Leahy said:

But, I am not convinced that the Mercoid decision abolishes all contributory infringement liability. While the five opinions in that case express the particular views of the Justices on the broad question of contributory infringement, the precise holding of Mercoid is that contributory infringement liability may not be asserted by the patentee where he, himself, comes into court with unclean hands and where he has attempted to misuse his patent grant.

\* \* \* \* \* \*

If my reading of the Mercoid case is inaccurate and plaintiff here will never be subject to suit as a contributory infringer by defendant, this newly created right of freedom from suit is a right in vacuo if defendant is free to make charges of direct infringement against both persons who have purchased equipment from plaintiff and against plaintiff's prospective customers, with resultant loss to plaintiff's business. In Alfred Hofmann, Inc., v. Knitting Machines Corp. et al., 3 Cir., 123 F.2d 458, 461, it was said: "We are of the opinion that the allegation and proof by a vendor that it is engaged in a course of conduct, the sale of machinery, which has brought and must bring purchasers from it into conflict with the owner of the patent, is sufficient to support a suit for a declaratory judgment by the vendor."

Even more pertinent to the instant case, the judge added:

Where the patent owner makes his position clear with respect to a manufacturer's customer, the result is that the declaratory judgment plaintiff, as manufacturer, finds his competition threatened by such patent owner's assertions; and the other result is the customer's fear of suit against itself. When this happens, a real controversy exists over the scope of the patent as between the declaratory judgment plaintiff v. the owner of the patent.

\* \* \* \* \* \*

Plaintiff should have the right to challenge the reissue patent; if not, it stands the chance of losing its former and prospective customers, in view of the position taken by defendant of the coverage of its claims. There is controversy here; and it is ripe for litigation.

National Coupling should have the opportunity to vindicate itself of the charge that it is a contributory infringer. Furthermore, since Press-Seal has put the validity of the patent in issue, National

Coupling should have the right to challenge the patent. Of the two questions, validity and infringement, "validity has the greater public importance." Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945).

The judgment of dismissal is reversed and the cause is remanded for proceedings not inconsistent with this opinion.