**STICKER INDUSTRIAL SUPPLY CORP., Plaintiff-Appellant,**

v.

**BLAW–KNOX CO., and A. J. Boynton & Co., Defendants-Appellees.**

**No. 15574.**

United States Court of Appeals Seventh Circuit.

Oct. 26, 1966.

Rehearing Denied Nov. 30, 1966.

Howard M. Kohn, Cleveland, Ohio, Alan J. Altheimer, Lionel G. Gross, Howard L. Kastel, Chicago, Ill., Blythe D. Watts, H. F. Schneider, Watts & Fisher, Harold Galvin, Leslie L. Knowlton, Schlesinger, Galvin, Kohn & Landefeld, Cleveland, Ohio, Altheimer, Gray, Naiburg, Strasburger & Lawton, Chicago, Ill., for plaintiff-appellant.

Russell H. Clark, Chicago, Ill., William Henry Venable, Charles M. Thorp, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendants-appellees.

Before SCHNACKENBERG, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This case involves a method patent for adding solid alloys to molten steel in steel production. Count I of the complaint seeks a declaratory judgment that the patent is invalid. Count II seeks damages for unfair competition on the ground that defendants have been asserting the validity of the method patent, although they knew it was fraudulently obtained. Count III charges that defendants monopolized commerce, in violation of Sections 1 and 2 of the Sherman Act, by means of the fraudulently obtained method patent. The defendants moved for summary judgment,[1] and both sides filed affidavits and exhibits with respect to that motion. Defendants' motion was subsequently granted.

The plaintiff is an Ohio corporation manufacturing and selling specialized steel metal equipment to steel producers. Defendant Boynton is an Illinois corporation performing engineering services for the steel industry, and it owns this method patent. Defendant Blaw-Knox Co. is a Delaware corporation manufacturing and selling specialized steel equipment and is the exclusive licensee of this method patent.

Sticker and Blaw-Knox are the only manufacturers and sellers of variable-rate ladle feeders to the steel industry. A variable-rate ladle feeder is a machine which feeds solid alloys into ladles. The rate of feed of the alloy is varied by vibrating the feeder. This results in add-

---

1. Defendants' motion also prayed for dismissal of the action, but upon the filing of the supporting affidavits, the motion was converted to one for summary judgment. Rule 12(b) of the Federal Rules of Civil Procedure.

ing the alloy in proportion to the rate molten steel flows from the metallurgical furnace into the ladle. The method of adding alloys to molten steel by means of variable-rate metal feeders was the subject of a method patent issued in November 1964 to Boynton pursuant to an April 1964 judgment authorizing the Patent Office to issue a patent on this method. Tietig v. Ladd, 228 F.Supp. 637 (D.D.C., 1964). The claims had earlier been rejected by the Patent Office. Blaw-Knox is the exclusive licensee of the method patent.

Sticker and Blaw-Knox competed in the sale of variable-rate ladle feeders for several years prior to 1964. In 1965, Sticker was unable to obtain any more orders for such feeders, allegedly because of Blaw-Knox's patent infringement threats.

According to Sticker, its ladle feeders were built to order for its customers, are still in use by them and carry out the method claimed in this patent, but without being licensed thereunder. Sticker also claims that its feeders cannot be employed for any other use without alterations, and that there has been no substantial non-infringing use of its feeders.

In December 1961, Blaw-Knox's patent counsel wrote to plaintiff's President, stating that he was of the opinion that Boynton would receive this method patent, and that all Blaw-Knox's installations would infringe the method patent unless a license were obtained from Boynton. In this letter, Blaw-Knox's patent counsel also stated that plaintiff's customers' right to continue using plaintiff's ladle feeders would remain "to be settled" if Boynton's method patent application were granted.

In May 1964, Blaw-Knox sent notices to its customers that the Boynton method patent was just held patentable and that licenses were available. In effect, the notices indicated to the customers that they would need a license under the method patent or would be infringing it.

■ We have concluded that the Declaratory Judgment Act (28 U.S.C. Sec. 2201 et seq.) entitles plaintiff to an adjudication of the validity of this method patent as prayed in Count I of the complaint. Since both plaintiff and Blaw-Knox had been bidding on similar ladle feeders for the same customers, Blaw-Knox's patent counsel's December 1961 letter really amounted to a statement that plaintiff's installations, as well as Blaw-Knox's, would infringe the method patent unless licensed. Furthermore, various affidavits submitted by plaintiff in opposition to defendants' motion for summary judgment show that prospective customers did not buy plaintiff's ladle feeders because Blaw-Knox claimed their use would violate the Boynton method patent. In considering the affidavits and exhibits, all inferences must be resolved against the movant for summary judgment (Caylor v. Virden, 217 F.2d 739, 741 (8th Cir. 1955); 6 Moore's Federal Practice (2d ed. 1965) par. 56.15(3)), especially since Sticker, the opponent of the summary judgment, has filed material controverting the movant's. Cf. International Longshoremen's & Warehousemen's U. v. Kuntz, 334 F.2d 165, 168, note 4 (9th Cir. 1964); Moore, op. cit., par. 56.22(2).

In E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852 (7th Cir. 1937), certiorari denied, 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884, this Court first held that the Declaratory Judgment Act permits an alleged infringer to test the validity of a patent, for it "was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued" (at p. 854). Unless the Declaratory Judgment Act is given a liberal interpretation in this field, patentes would be able to threaten a manufacturer's customers with suit and yet the patentee would be able to avoid suit by the injured manufacturer merely by failing to communicate an infringement threat directly to the manufacturer. See Treemond Co. v. Shearing Corporation, 122 F.2d 702, 704–705 (3rd Cir. 1941).

That is why Professor Borchard has stressed that justiciability exists under the Declaratory Judgment Act if "the alleged infringer or his customers or dealers have been notified of the patentee's claim, however informal the method of notification or charge." Borchard, Declaratory Judgments, (2d ed. 1941), p. 807.[2]

■ Blaw-Knox, according to Sticker, has claimed that the unlicensed Boynton method use of Sticker's ladle feeders by Sticker's customers would violate Blaw-Knox's patent rights. A similar situation was involved in National Coupling Co. v. Press-Seal Gasket Corp., 323 F.2d 629 (7th Cir. 1963). There we upheld jurisdiction for a declaratory judgment action where the defendant patentee accused a customer of plaintiff of contributory infringement for installing plaintiff's gaskets on the customer's pipes, thus importing a contributory infringement charge against the plaintiff. Leach v. Ross Heater & Mfg. Co., 104 F.2d 88, 91 (2d Cir. 1939) and Alfred Hofmann, Inc. v. Knitting Machines Corporation, 123 F.2d 458, 461 (3rd Cir. 1941) also support jurisdiction here. *National Coupling* holds too that a patentee cannot avoid jurisdiction by raising an "infringer's" defense that its product is a staple article or commodity of commerce (35 U.S.C. Sec. 271(c)), so that here Blaw-Knox cannot defeat jurisdiction by asserting that Sticker's ladle feeder is such an article or commodity.

■■ As pointed out in Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 237 (D.N.J.1966), the "touchstone" for determining whether there is jurisdiction under the Declaratory Judgment Act is whether the plaintiff has a "reasonable apprehension" of liability to himself and his customers. Under the allegations of this complaint and the affidavits opposing the motion for summary judgment, this test has been met. Since Sticker's product was allegedly not a staple and since its customers had been told that their unlicensed use of plaintiff's ladle feeders would make them infringers of this method patent, Sticker had good reason to fear that it might be liable for contributory infringement, so that there is the requisite controversy under the Declaratory Judgment Act.

To avoid jurisdiction, defendant relies on Walker Process Equipment, Inc. v. FMC Corporation, 356 F.2d 449 (7th Cir. 1966). However, the question of infringement had been freshly adjudicated there, and subsequently the patentee never charged the plaintiff or its customers with any kind of infringement. The FMC Corporation only cautioned possible infringers and offered licenses to them, whereas Blaw-Knox has allegedly charged Stickler with contributory infringement and persuaded steel manufacturers not to purchase Sticker's ladle feeders because their unlicensed use would infringe Boynton's method patent. Thus a viable charge of plaintiff's contributory infringement is present here. In contrast, in *Walker*, the plaintiff's equipment was capable of non-infringing uses, so that Walker would have no legitimate reason to fear liability for contributory infringement.

Defendant relies on Aralac Inc. v. Hat Corporation of America, 166 F.2d 286 (3rd Cir. 1948). Aralac manufactured and sold casein fibers, an article of commerce of ordinary use, so that Aralac could not be guilty of contributory infringement if its customers should use the fibers in an infringing manner. Therefore, Aralac had no right under the patent laws to invoke a suit under the Declaratory Judgment Act. Here plaintiff's ladle feeders were custom-built for use in the process embodied in the Boynton patent, so that their sale for employment in the Boynton process would make plaintiff a contributory infringer within the meaning of the Patent Act (35 U.S.C. 271(c)).

---

**2.** Professor Moore also favors a "very liberal interpretation of infringement charges because the Declaratory Judgment Act is designed to prevent the necessity of acting at one's peril." 6 Moore's Federal Practice (2d ed. 1965) par. 57.20.

Unfair competition Count II and antitrust Count III are in essence based on Sticker's charge that in Boynton's 1957 application for this method patent the patentees falsely swore that the subject matter had not been in public use for more than a year, although the applicants knew that the method had actually been in public use since June 1953 at the Lone Star Steel Company plant in Texas. The complaint itself acknowledges that the 1957 application was a continuation in part of an earlier 1953 application,[3] and the documents tendered by plaintiff in opposing summary judgment are not to the contrary. Accordingly, the patentee was entitled to the 1953 filing date, together with continuity of the full disclosures in the 1953 application (Jacquard Knitting Mach. Co. v. Ordnance Gauge Co., 213 F.2d 503, 507, 508 (3rd Cir. 1954); 35 U.S.C. Secs. 112 and 120), thus negating plaintiff's charge of fraud. The motion for summary judgment was properly granted as to Counts II and III. However, the cause is remanded for a trial of Count I.

Reversed and remanded.

---

3. Judge Jackson found too that the 1957 application was a continuation-in-part of the 1953 application. Tietig v. Ladd, 228 F.Supp. 637, 638, note 1 (D. D.C. 1964).