UNIFORM PRODUCT CODE
COUNCIL, INC., Plaintiff,

v.

Walter KASLOW, Defendant.

No. 78 Civ. 2373 (WCC).

United States District Court,
S. D. New York.

Sept. 28, 1978.

Smith, Steibel, Alexander & Saskor, P. C., New York City (Stuart Fisher, New York City, of counsel), Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C. (Robert G. McMorrow, Darryl Mexic, Washington, D. C., of counsel), for plaintiff.

Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City (John M. Calimafde, Michael Ebert, New York City, of counsel), for defendant.

## OPINION AND ORDER

CONNER, District Judge:

This is an action for a declaratory judgment of invalidity and non-infringement of U.S. Patent No. 3,959,624 which was issued May 25, 1976 to defendant Walter Kaslow and which covers a system and method of electronically "reading" a coded symbol on a discount coupon presented by a retail customer, verifying that the coupon applies to one of the items actually purchased by the customer and, if so, deducting the discount from the customer's bill. The action is before the Court on defendant's motion for summary judgment dismissing the complaint on the ground that there is no justiciable controversy between the parties.

*The relevant facts*

The following facts are either agreed by the parties or asserted in affidavits submitted by plaintiff which, for purposes of determining the existence of an issue of fact, must be accepted as true; see *Sticker Industrial Supply Corp. v. Blaw-Knox Co.*, 367 F.2d 744, 746 (7th Cir. 1966):

1. Plaintiff is a tax-exempt membership corporation whose members include manufacturers of products marked with symbols embodying a Uniform Product Code (UPC) identifying the manufacturer, product and retail price. In participating retail stores, the check-out stands are provided with equipment which optically "reads" the coded symbols on the items selected by each customer and electronically computes the total price of such items.

2. As early as 1973, plaintiff had contemplated the use of similar coded symbols on discount coupons, such as are included in newspaper advertisements, with such symbols being presented for scanning by the same reading equipment at the check-out stand to verify that the customer presenting the coupon has actually selected for purchase the item to which the discount was intended to apply and, if so, to deduct the discount from the total bill. The purpose, of course, was to prevent "misredemption"—crediting the discount to a customer who had not purchased the item to which the discount applied—which had resulted in losses estimated to amount to millions of dollars annually.

3. During 1975, while his application for the patent in suit was pending in the Patent and Trademark office, defendant was in communication with plaintiff concerning the application, and plaintiff, through its counsel, notified defendant that plaintiff had no interest in it.

4. During early 1976, plaintiff, the Newspaper Advertising Bureau (NAB) and certain manufacturers and retailers cooperated in a field test of a UPC discount coupon system, with the coupons being included in newspaper advertisements.

5. The May 10, 1976 issue of Sales and Marketing Management contained an article describing these tests.

6. On June 3, 1976, defendant wrote to Mr. Richard L. Neale, Vice President of NAB, referring to the article and stating:

"It is important for the NAB to know that this UPC scheme is original with me and that a patent was recently awarded (copy enclosed) which *essentially covers* the UPC cents-off system described in the article. * * * My purpose in calling this patent to your attention is to advise you that it is available for licensing on reasonable royalty terms." (Emphasis added).

Neale did not reply to this letter.

7. During the summer of 1976, plaintiff retained counsel to study the patent in suit and was advised that the patent was invalid and/or unenforceable. In September of

1976, plaintiff, in reliance on this opinion, issued to its members its Guideline 22, describing a UPC discount coupon system and recommending its adoption.

8. In May 1977, Neale spoke at a workshop of the Association of National Advertisers and discussed the UPC discount coupon system. Defendant heard Neale's presentation and, at its conclusion, approached Neale, told him of his patent and asked him whether Neale had received his letter of June 3, 1976. Neale replied that he had not.

9. The next day, May 25, 1977, defendant wrote Neale again, sending him a copy of the earlier letter. In the covering letter, defendant stated:

> "What is important is your announced plan to conduct further tests *utilizing a system for which a United States patent has been awarded to me.* Please be advised that *I intend to take all necessary steps to protect my patent position.*" (Emphasis added).

Neale (quite understandably) construed this as a threat of suit for patent infringement, and so notified the others who had cooperated in the tests. As a direct result of defendant's action, NAB discontinued its efforts to test and promote a system employing UPC-coded discount coupons in newspaper advertisements.

10. Defendant also contacted a number of manufacturers of products on which the UPC symbols are used and attempted to interest them in using UPC discount coupons in conjunction therewith, but without success. Partly because of such contacts and defendant's other activities described above, it has become widely understood in the trade that defendant has a patent broadly covering the UPC-coded discount coupon system.

11. Plaintiff has submitted affidavits of officials of several major manufacturers of products employing UPC symbols, each stating that they have not yet put into operation a UPC discount coupon system as proposed in Guideline 22 only because they fear an action for infringement of defendant's patent and that if and when the pat-ent is ruled invalid or not infringed by such a system, they will proceed promptly to implement Guideline 22. The adoption of such a system would require merely that the existing UPC computer equipment at the check-out stands be reprogrammed—a change requiring no new hardware.

## Defendant's Contentions

Defendant argues that there is no justiciable controversy between the parties for the following reasons:

1. Plaintiff has no standing to bring this action because it has not itself infringed the patent in suit nor has it any intention to do so, or even the capability of doing so.

2. Defendant could not have sued any of plaintiff's member companies because none of them has yet committed an infringing act. Indeed, at the time this action was filed, defendant did not know who the members of the plaintiff corporation were, had never seen plaintiff's Guideline 22, and did not know whether any of the member companies had any plans to implement it.

3. It would be unfair to permit plaintiff to sue for a declaratory judgment respecting defendant's patent because there is no mutuality of risk. A judgment in defendant's favor would not bind plaintiff's member companies, who are not parties to the action, while a judgment against defendant would estop him, under the doctrine of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), from suing those companies or anyone else for infringement of the patent.

## DISCUSSION

### Standing

By publishing and distributing Guideline 22, plaintiff has urged its members to put into practice a UPC discount coupon system and instructed them how to do so. Defendant has notified trade association representatives that its patent broadly covers such systems, and that he intends to enforce the patent. As a result, plaintiff's members

have refrained from employing a UPC discount coupon system as proposed by plaintiff, although some are able, ready and otherwise willing to do so.

█ If they did so, and if their activities were ruled to infringe defendant's patent, plaintiff would clearly be guilty of "actively inducing" such infringement and would "be liable as an infringer." 35 U.S.C. § 271(b). This ultimate exposure of plaintiff to an action by defendant for damages clearly gives plaintiff standing to bring an action for declaratory judgment in its own right. It is therefore unnecessary to consider whether plaintiff, as a "trade association," has standing to sue on behalf of its members.

Plaintiff's direct vulnerability to an action on the patent is in all respects comparable to that of the declaratory judgment plaintiffs in *Blackman v. Hadron, Inc.*, 450 F.2d 781 (2d Cir. 1971), and *Sticker Industrial Supply Corp. v. Blaw-Knox Co., supra.* In each of those cases, the plaintiff was offering to supply to customers equipment especially adapted for use in a process which the defendant had charged would infringe its patent; if the process did infringe, the plaintiff would be liable under 35 U.S.C. § 271(c) as a contributory infringer. This exposure was ruled to confer standing to bring an action for declaratory judgment.

*Ripeness*

It remains, of course, to determine whether the controversy between plaintiff and defendant is presently ripe for determination—*i.e.*, whether such an action brought before there has been any commercial use of the accused system is premature.

In *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 89–90 (2d Cir. 1963), Judge Medina stated the applicable principles:

"[W]hile the early cases required that plaintiff actually be engaged in infringing conduct, this is no longer the law, and it is now sufficient that plaintiff either be engaged in manufacturing, using or selling the invention, or that he has the immediate intention and ability to do so.

*Technical Tape Corp. v. Minnesota Mining & Mfg. Co.*, 2 Cir., 1952, 200 F.2d 876, 878; *Welch v. Grindle*, 9 Cir., 1957, 251 F.2d 671, 678; *Crowell v. Baker Oil Tools*, 9 Cir., 1944, 143 F.2d 1003, 1004, cert. denied, 323 U.S. 760, 65 S.Ct. 93, 89 L.Ed. 608; *United States Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp.*, S.D.N.Y.1946, 67 F.Supp. 895, 898; *General Electric Co. v. Refrigeration Patents Corp.*, W.D.N.Y.1946, 65 F.Supp. 75, 78; *Borchard, supra* at page 807; 22 Geo. Wash.L.Rev., supra at 69–71. The converse is equally true; that where there is no actual manufacture, use or sale, and no immediate intention and ability to practice the invention, there is no justiciable controversy. *Dewey & Almy Chemical Co. v. American Anode, Inc., supra,* 137 F.2d 68, at 70; *Fash v. Clayton*, D.N. Mex.1948, 78 F.Supp. 359, 361. The explanation for these principles is that it would be economically wasteful to require a plaintiff to embark on an actual program of manufacture, use or sale which may turn out to be illegal (*Crowell v. Baker Oil Tools, supra,* 143 F.2d at 1004); on the other hand, a vague and unspecific 'desire' to practice an invention if a patent should turn out to be invalid smacks too much of the hypothetical and contingent, and allowing the declaratory remedy in such a situation would unfairly subject the defendant to the burdens of a lawsuit. 22 Geo.Wash.L.Rev., supra at 70–71; Russell, Some Patent Aspects of Declaratory Procedure, 32 J.Pat.Off.Soc'y 504, 525–30 (1950)."

In the present case, several of plaintiff's members have stated under oath that they will implement Guideline 22 if and when the obstacle of defendant's patent is removed. Their doing so requires merely the reprogramming of the existing UPC reader-computer equipment in the check-out stands of the participating retailers. No extensive preparations are required.

█ Defendant's disclaimer of knowledge of the system proposed by Guideline 22 is unavailing. Defendant chose to broadcast

warnings that the use of a UPC discount coupon system (presumably *any* such system) is covered by his patent. Having done so, he cannot now be heard to argue that there is no justiciable controversy because he does not know what system is intended to be used.

■ One who threatens a lawsuit without knowing whether he really has a cause of action cannot take refuge in his ignorance to escape declaratory judgment action by the one menaced. A charge made without investigation may obviously inflict fully as much commercial harm as one made with full access to the facts.

The present situation is not unlike that in *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir. 1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970), where the defendant had sent letters to plaintiff's customers asserting that plaintiff was incapable of preparing any workable anaerobic adhesive which would not infringe its patents. The Court ruled that this claim constituted sufficient basis for a declaratory judgment action, despite defendant's disavowal of knowledge of plaintiff's formulation.

*Mutuality*

■ Defendant's final argument that it would be unfair to allow this patent controversy to proceed to a judgment which could benefit plaintiff's member companies but would not be binding against them is likewise unpersuasive. Defendant's threats implicated a number of prospective users of UPC discount coupon systems. Any one of them could have sued for declaratory judgment without the others. Unless defendant impleaded the others and asserted a claim of infringement against them, they would have benefited by a judgment of invalidity under *Blonder-Tongue, supra,* but would not have been bound by a ruling of validity. Such a lack of mutuality is the inherent consequence of *Blonder-Tongue* —a result which the *Blonder-Tongue* Court contemplated at length and expressly condoned.

■ This Court concludes that at the least there is an issue of fact as to the existence of a justiciable controversy between plaintiff and defendant respecting the validity of defendant's patent and its infringement by the UPC discount coupon system proposed by plaintiff in its Guideline 22. The existence of such an issue precludes summary disposition. Defendant's motion is therefore denied, without prejudice to an application by defendant, in the event he disputes any of plaintiff's material assertions of fact respecting the existence of a justiciable controversy, for a separate trial of such issue.

SO ORDERED.