**TRW, INC., Plaintiff-Appellant,**

v.

**ELLIPSE CORPORATION and Ford Motor Company, corporations, Defendants-Appellees.**

No. 73–1348.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1974.

Decided April 22, 1974.

Lee N. Abrams, George N. Hibben, Chicago, Ill., Robert W. Poore, Cleveland, Ohio, for plaintiff-appellant.

Norman Lettvin, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

Plaintiff TRW, Inc. appeals from an order dismissing its complaint against defendants Ellipse Corp. and Ford Motor Co. in an action seeking a declaratory judgment that claim 3 of Rhine patent No. 2,628,568 [1] is invalid. TRW asserts on appeal that the lower court erred in dismissing the complaint for lack of jurisdiction and in the exercise of its discretion. Specifically, TRW contends that it is not bound under prin-

---

1. U. S. Patent No. 2,628,568, entitled "High Pressure Pump," was issued on February 17, 1953 to M. L. Rhine and was subsequently assigned to Ellipse Corp.

ciples of *res judicata* by the finding in Ellipse Corp. v. Ford Motor Co.[2] respecting the validity of claim 3 of the Rhine patent. TRW asserts that the jurisdictional elements of a declaratory judgment action are present, because a justiciable case or controversy, reflected in a viable, outstanding charge of patent infringement exists, and because effective relief to effectuate the judgment could be granted. Moreover, TRW maintains that it is an abuse of discretion to dismiss the action, since the issues have not been resolved as against TRW and since the entertaining of this suit would not result in "piecemeal" litigation of the claim's validity. In the alternative, TRW argues that if this suit's objective' is deemed designed to seek modification of the court's mandate in Ellipse Corp. v. Ford Motor Co., this court should grant leave to the district court to evaluate the validity of the patent claim in light of the new evidence tendered by TRW and to reopen the merits of that case to effect relief, because the court was misled into sustaining the patent claim on an erroneous inventive feature. We have considered these issues, and we affirm the dismissal of the action.

This suit grew out of an earlier action, Ellipse Corp. v. Ford Motor Co., *supra*, in which Ellipse charged that power steering pumps manufactured or sold by Ford infringed the Rhine patent. The lower court sustained the validity and infringement of claims 1 and 3 of the patent,[3] and this court affirmed the findings respecting claim 3. The Supreme Court denied certiorari, and the action is now pending in the district court on an accounting to determine damages.

TRW was not a named party in the prior suit, and its participation was limited to observing the district court proceedings and to filing *amicus curiae* briefs at the appellate level. However, TRW manufactured and sold to Ford approximately 35% of the power steering pumps held to infringe claim 3 of the Rhine patent. These pumps were sold pursuant to a contract in which TRW agreed to indemnify Ford for the costs of defending any accounting proceeding and for any judgment based on patent infringement by the pumps purchased from TRW.

TRW asserts that as it was not a named party in the suit of Ellipse Corp. v. Ford Motor Co., it was not bound by the findings of this court in that case respecting the validity of claim 3 of the Rhine patent, Philips Electronics and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc., 450 F.2d 1164, 1170 (3rd Cir. 1971), and it is not barred from relitigating the validity of the claim. American Photocopy Equipment Co. v. Rovico, Inc., 384 F.2d 813 (7th Cir. 1967), cert. den., 390 U.S. 945, 88 S.Ct. 1030, 19 L. Ed.2d 1133 (1968). Ellipse does not contend that TRW was a party to the previous litigation; rather, it argues that TRW was in privity with Ford and is thereby barred from bringing this suit. "Where the issues in separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal. . . . A judgment is *res judicata* in a second action upon the same claim between the same parties or those in privity with them." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1939); Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876).

In most situations where privity has been found to exist, one or more of the following relationships are present between the privies: concurrent relationship to the same right of property, successive relationship to the same right of property, or representation of the interests of the same person. 1B J. Moore,

---

2. Ellipse Corp. v. Ford Motor Co., 452 F.2d 163 (7th Cir. 1971), reh. den., (1971, unpub.), cert. den., 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972) (Douglas, J., dissenting), reh. den., 409 U.S. 898, 93 S.Ct. 99, 34 L.Ed.2d 337 (1972).

3. 312 F.Supp. 646 (N.D.Ill.1969).

Federal Practice, ¶ 0.411[1] (2d ed. 1948). These relationships are illustrated by the cases cited by Ellipse. Thus, in Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148 (1917), the Supreme Court found that a company wholly-owned by another company was its privy, because the companies "represented precisely the same, single interest." *Id.* at 298, 37 S.Ct. at 507. The same principle was applied by the Court in Sunshine Anthracite Coal Co. v. Adkins, *supra*, where the Court found privity between officers of the same government "so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation between that party and another officer of the government." That holding was followed in Ma Chuck Moon v. Dulles, 237 F.2d 241 (9th Cir. 1956), cert. den., 352 U.S. 1002, 77 S.Ct. 559, 1 L.Ed.2d 547 (1957), where the court also held that privity existed between a father who brought a prior action on behalf of his sons and the sons themselves in a later action. In J. R. Clark Co. v. Jones & Laughlin Steel Corp., 288 F.2d 279 (7th Cir. 1961), and in Brunswick Corp. v. Chrysler Corp., 408 F.2d 335 (7th Cir. 1969), the second defendant had purchased the business assets of the unsuccessful party during or subsequent to the determination in the previous litigation to which he was held bound. Similarly, in Schnitger v. Canoga Electronics Corp., 462 F.2d 628 (9th Cir. 1972), the court found *res judicata* applicable where the declaratory judgment plaintiff was a prospective buyer of infringing products which the manufacturer had been enjoined from making available, thus presenting only a derivative, successive interest to the same property right. None of these relationships is applicable to the case at bar; certainly there is no question of representation of the interests of the same party, and furthermore, there is no relationship (either concurrent or successive) arising from the general doctrine of privity of estate.

Two other cases cited by Ellipse, Switzer Bros., Inc. v. Chicago Cardboard Co., 252 F.2d 407, 411 (7th Cir. 1958), and Jones v. Craig, 212 F.2d 187, 188 (6th Cir. 1954), illustrate the *res judicata* effect of participation in litigation by a nonparty whose interest is sufficiently closely related to the suit. In the former case, an indemnitor who retained the indemnitee-defendant's counsel and controlled the litigation was held entitled to the benefit of the judgment for the indemnitee. In the latter case, a warrantor received the benefit of an earlier judgment in a case in which he jointly prepared the defense and shared its cost. It is well-established that one interest sufficient to bring a participating nonparty within the conclusionary rule is a legal duty, right or interest dependent wholly or in part on a cause of action before the court for adjudication. 1B J. Moore, *supra*, at ¶ 0.411[6]. Professor Moore explicitly suggests that a manufacturer-indemnitor who participates in the defense of a patent infringement suit against a dealer in the manufactured product would have sufficient interest under this principle to be bound by the resulting decree. *Id.* at n. 20. But the crucial distinction between this example and the cited cases and the case at bar is the extent of participation, for privity in the law of judicial finality usually connotes representation. TRW limited its role in the prior suit to observing the proceedings and to filing *amicus curiae* briefs. These are insufficient modes of participation to render applicable the doctrine of *res judicata*, Brown-Crummer Investment Co. v. Paulter, 70 F.2d 184 (10th Cir. 1934); 1B J. Moore, *supra*, and therefore TRW is not bound by the adjudication of the validity of the claim in Ellipse Corp. v. Ford Motor Co.

TRW contends that the jurisdictional requisites for a declaratory judgment exist in part because a justiciable controversy is created between a patent owner and the manufacturer of a product when the patent owner alleges in-

fringement against one who has purchased the product from the manufacturer, even when no direct charge has been made against the manufacturer. The implication of the argument is that a real controversy was created between Ellipse and TRW as a consequence of Ellipse's allegation of infringement against Ford respecting certain power steering pumps, some of which were manufactured by TRW. It is true, as this court stated in Sticker Industrial Supply Corp. v. Blaw-Knox Co., 367 F.2d 744, 747 (7th Cir. 1966), that under the Declaratory Judgment Act, justiciability exists if the alleged infringer or his customers or dealers have been notified of the patent owner's claim. *Accord*, E. Borchard, Declaratory Judgments 807 (2d ed. 1941). But that contention begs a fundamental question of this appeal: When is the underlying charge of patent infringement adjudicated with sufficient finality to extinguish the justiciable controversy?

This case markedly resembles Walker Process Equipment Co. v. FMC Corp., 356 F.2d 449 (7th Cir. 1966), in which a manufacturer of sewage equipment sought a declaratory judgment of the invalidity of a patent. The patent owner, FMC, had previously sued one of Walker's customers, alleging infringement through the use of Walker equipment. The Fourth Circuit held that the patent was valid and not infringed. In the action for a declaratory judgment, this court affirmed because of the absence of an actual controversy, stating, "Whatever infringement charges were made in the . . . litigation were resolved, and the controversy between the parties terminated, by the judgment of the Court of Appeals." *Id.* at 451. The court cited Aralac, Inc. v. Hat Corp. of America, 166 F.2d 286 (3rd Cir. 1948),

for the proposition that a declaratory judgment cannot be maintained against a patent owner unless the plaintiff is in fact accused of infringement by the owner, and the court concluded, "In view of the fact that there are no outstanding charges by FMC of infringement by Walker or Walker's customers, there is no justiciable controversy between the parties." [4]

TRW asserts that *Walker* and *Aralac* are factually distinguishable from the present case, because at the time of the filing of the declaratory judgment complaints, these patents were not being asserted as infringed by products manufactured by the declaratory judgment plaintiffs. In fact, however, FMC had formally charged Walker with active inducement of infringement in the prior case.[5] Moreover, the gist of every justiciable controversy involving a patent owner and a manufacturer whose customer is sued is the implicit charge of active inducement to infringement or contributory infringement. Again, the issue in both *Walker* and the present case was the extinguishment, and not the creation, of a justiciable controversy. And the striking parallel between *Walker* and the case at bar is that in neither case did the patent owner make a charge of infringement against the manufacturer *independently* of the allegation against the customer.

TRW replies that in fact an implicit, independent charge of patent infringement was leveled against TRW by Ellipse by virtue of the allegation of infringement in Ellipse Corp. v. Ford Motor Co. which survives any termination in that suit and provides the jurisdictional basis for this action. TRW asserts that a claim of infringement against a product purchased and used without essential alteration by the cus-

---

4. The court also held that a mere economic interest, in the absence of a viable charge of infringement, was insufficient, in rejecting the argument that a manufacturer's indemnity agreements with possible infringing customers, without more, gave it standing to maintain the action.

5. FMC actually sued both Walker and a customer in the earlier action. Walker was dismissed from the suit because it was not subject to process in that jurisdiction.

tomer necessarily embodies a claim of infringement against the manufacturer (in contrast with a claim of infringement arising out of the use of the manufacturer's product in a process allegedly within the scope of the patent). We find this distinction unacceptably artificial and arbitrary. While it is true that the casein fibers, the manufacturer's product in *Aralac,* were noninfringing except when used in an allegedly infringing process to convert the fibers and other ingredients into a new commodity, the manufacturer's product in *Walker,* sewage digester stirrer equipment, was not likewise susceptible to myriad uses. Though the complaint in *Walker* may have been couched in terms of process infringement, it was actually directed against a product so specialized (unlike that of *Aralac*) as to have doubtful utility outside the process. Similarly, the charge here was directed against a particular customer's specialized use of an infringing power steering pump. We conclude that where, as here, the charge of patent infringement is asserted against the use of a product by a particular customer, no independent charges of patent infringement unrelated to the litigation are implied.

■ TRW next contends that whereas the patent in *Walker* was held not infringed, Ford's power steering pump was found to infringe Ellipse's patent. Therefore, the "cloud" on TRW's patent persists, and the controversy is not extinguished. However, the existence of a viable, outstanding charge of patent infringement is only an indirect measurement of a reasonable apprehension of liability, the "touchstone" for determining jurisdiction under the Declaratory Judgment Act. Sticker Industrial Supply Corp. v. Blaw-Knox Co., *supra,* 367 F.2d at 747. Under the holding of the Supreme Court in Aro Manufacturing Co. v. Convertible Top Co., 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), there can be no apprehension of liability by TRW arising from the decision against Ford because judgment against Ford extinguishes the claim and bars a

second suit against TRW on the same matter. Similarly, there can be no reasonable apprehension of liability respecting other claims, because no viable, outstanding charges of patent infringement survive the Ellipse Corp. v. Ford Motor Co. litigation.

■ TRW finally contends that even if there are no independent charges of infringement against it, a justiciable controversy still exists because, unlike *Walker,* the prior litigation has not yet been terminated by a final decree which is a binding adjudication between the parties. Therefore, because the court could reopen the case prior to entry of its final judgment at the close of the accounting, the jurisdictional predicate for this action is present. In In re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994 (1897), the Supreme Court held that there could be no rehearing of the merits even though the reviewing court's decision did not amount to a final judgment because of a pending accounting, unless the reviewing court had first granted leave. The case of Ellipse Corp. v. Ford Motor Co. was exhaustively litigated through an appeal in this court on the validity of claim 3 of the patent, followed by a petition for rehearing in this court as well as by both a petition for certiorari and a petition for rehearing in the Supreme Court. Further, even TRW concedes that the allegedly new evidence which it has obtained was either known or could have reasonable been known by Ford, precluding its use as a basis for a motion for a rehearing on the merits in an attempt to achieve a different result. Unlike Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922), there is no litigation arising from independent charges of patent infringement pending elsewhere which might undermine the lower court's decision respecting the patent's validity. Thus, whether the lower court's decision is technically *res judicata,* Locklin v. Day-Glo Color Corp., 468 F.2d 1359 (9th Cir. 1972), or "law of the case" is somewhat of an academic question. On the facts presented here,

the possibility of a rehearing on the merits is so extremely remote as to warrant the conclusion that the lower court's decision is sufficiently final for purposes of extinguishing the controversy on which the viable, outstanding charge of patent infringement would have necessarily had to have been grounded.

Erroneously assuming that an actual controversy still exists, TRW further argues that effective relief predicated on a favorable decision could be granted, and therefore, a decision in favor of TRW holding claim 3 of the patent invalid would be more than a mere advisory opinion. As TRW points out, a most significant fact, critical to this appeal, is that the proceedings in Ellipse Corp. v. Ford Motor Co. are still pending on an accounting. TRW suggests, as an example of effective relief, that a court could require Ellipse to forego pursuit of any further effort to recover from Ford on account of any alleged patent monopoly. This request for this extraordinary form of relief from a prior decree is wholly unsupported; Directoplate Corp. v. Huebner-Bleistein Patents Co., 44 F.2d 783 (7th Cir. 1930), is authority only for effecting rather than relieving a prior court decree. Rather, as the lower court presently noted, what TRW is really asking for is a modification of the decision previously entered in Ellipse Corp. v. Ford Motor Co. However, as the Ninth Circuit has held, a court of appeals is without power to transform an independent action into a motion to reopen a former judgment to permit further proceedings. Ma Chuck Moon v. Dulles, *supra*, 237 F. 2d at 243. Therefore, since we cannot stay the accounting and order the reopening of the merits of the decision in Ellipse Corp. v. Ford Motor Co., we agree with the conclusion of the lower court that a finding of invalidity of the patent at this time would be no more than an advisory opinion.

TRW suggests, too, that if it is allowed to proceed in this case and to obtain a final judgment of patent invalidity, it could receive effective relief indirectly, because that judgment would be a basis on which Ford, a customer in privity with TRW, could properly seek leave to reopen the earlier case. We reject the distortion in the requirement of privity inherent in TRW's litigation strategy. It is true that in Hart Steel Co. v. Railroad Supply Co., *supra*, the Supreme Court held that *res judicata* was applicable in the patent owner's prior suit pending on appeal against the distributor of the manufacturer's product when the patent owner lost a later-filed suit against the manufacturer of the accused product. But significantly, the manufacturer and the distributor in that case were but two manifestations of the same identity. In National Brake & Electric Co. v. Christensen, 254 U.S. 425, 41 S. Ct. 154, 65 L.Ed. 341 (1921), the Seventh Circuit had affirmed a holding of infringement and remanded for an accounting when the defendant, National Brake, petitioned to reopen the case to show that a final judgment in the Third Circuit had held the same patent to he invalid. This court decided against entertaining the petition, as its judgment was final, but the Supreme Court held that the petition should be treated as a request to the court to grant leave to the district court to reopen the case. Yet, unlike the case at bar, the defendant in that case alleged that it had been the substantial party in interest, though not the nominal defendant, in the Third Circuit action. Moreover, TRW incorrectly asserts that Ford on its own motion could present proof in the accounting proceeding of a decision in favor of TRW as a ground for excluding TRW pumps from the scope of the accounting. *National Brake* makes plain that Ford would have to apply in this court for leave to file a bill in the court of original jurisdiction in the nature of a bill of review, setting up the new matter as a bar to further proceedings. "Such applications are addressed to the sound discretion of the appellate tribunal, and should be decided on considerations addressed to the materiality of the new

matter and diligence in its presentation." *Id.* at 430, 41 S.Ct. at 156. We need not prematurely face this question not before us at this time. We only note in passing, because of its bearing on the court's capacity to grant effective relief, that it seems somewhat dubious to assume that the material is either new or was diligently pursued, given the candid admission of TRW that Ford either knew or could have reasonably known about the material.

■ TRW finally asserts that effective relief could be granted because it manufactures a myriad of products, including many forms of pumps which might be considered similar or equivalent in design characteristics to those sold to Ford. We note that no charge of patent infringement has been made against such TRW products. Furthermore, TRW has not even attempted to demonstrate to the court that its other products so sufficiently resemble the pump at issue that an independent, viable charge of infringement could be inferred.

■ Even if jurisdiction were present, it would not have been an abuse of discretion for the district court to dismiss the declaratory action, contrary to TRW's assertion. In E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852 (7th Cir. 1937), cert. den., 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937), this court held that the Declaratory Judgment Act permitted an alleged infringer to test the validity of a patent, for "it was the congressional intent to avoid [the] accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to bring suit, after damage had accrued." *Id.* 88 F.2d at 854. This was to prevent a patent owner from threatening a manufacturer's customer with suit for infringement while avoiding suit by the injured manufacturer in merely failing to communicate a direct threat to the manufacturer. Sticker Industrial Supply Corp. v. Blaw-Knox Co., *supra.* The decision of the court to entertain a suit for a declaratory judgment is a discretionary one. Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937). Only when the above policy of the Act is effectuated may the discretion of the court to hear an action be soundly exercised. Where there is a suit pending between the same parties or their privies in which the issue of infringement may be properly adjudicated, discretionary dismissal is appropriate, American Automobile Insurance Co. v. Freundt, 103 F.2d 613 (7th Cir. 1939), because the opportunity to litigate the issue is not denied to the manufacturer. Similarly, where a manufacturer is permitted to intervene in an infringement suit against the customer or where the indemnitee-customer permits the indemnitor-manufacturer to control the litigation, discretionary dismissal is justified, because again a fair opportunity to litigate the issue has been given to the manufacturer.

■ In the present case, there is no showing that Ford refused to permit TRW to participate in the defense in the prior suit, that TRW petitioned for intervention in the earlier suit, or that other circumstances such as conflicting positions adopted by the manufacturer and the customer would have denied TRW a fair opportunity to litigate the issue it seeks to have adjudicated in the present case. *See,* Western Electric Co. v. Hammond, 135 F.2d 283 (1st Cir. 1943). Indeed, it appears that in this case, it was the manufacturer, not the patent owner, who studiously avoided a legal confrontation by limiting his participation solely to observing the earlier proceedings and to filing *amicus curiae* briefs. It would be perverse to permit the Declaratory Judgment Act, designed to effectuate lawsuits, to be manipulated into a device allowing the avoidance of real legal involvement in an earlier pending suit between the manufacturer's customer and the patent owner, while permitting the manufacturer subsequently to collaterally attack aspects of

the decision unfavorable to its position. Moreover, such action to obtain a judgment in order to reverse the prior court decision smacks of a race for res judicata, a variant of the procedural fencing which this court abhorred in *Freundt*. Finally, for reasons explained previously, since no effective relief could be granted even if a decision favorable to TRW resulted, the dismissal of the declaratory action would be warranted because it could serve no useful purpose. *Cf.*, Chicago Furniture Forwarding Co. v. Bowles, 161 F.2d 411 (7th Cir. 1947). In that sense, the present case resembles the "piecemeal trial" condemned in Yellow Cab Co. v. City of Chicago, 186 F.2d 946 (7th Cir. 1951), which the court held was an advisory opinion to determine the effectiveness of a defense to be introduced in another proceeding.

TRW asserts, in the alternative, that if this action is deemed an attempt to modify the decision of the court in Ellipse Corp. v. Ford Motor Co., and if leave must be granted by this court to empower the lower court to alter its findings during the pendency of an accounting, such leave should be granted to prevent a "miscarriage of justice." First, a stranger to the lawsuit, who apparently concluded that its interests were insufficiently involved in the suit to warrant even an attempt at intervention, does not have standing to challenge subsequently the findings of the court. Second, even if TRW had standing, this court is not empowered to transmute an independent suit into a motion to reopen a previous decision. Third, even if the alleged new evidence were presented by Ford, since that evidence was either known or could have reasonably been known to Ford, it is unlikely that this evidence would provide the basis for granting a petition for leave to the district court to rehear the merits of the suit. Fourth, there is no basis for claiming that Ellipse has repudiated the court's decision in Ellipse Corp. v. Ford Motor Co.; on the contrary, in its response to TRW's request

for admissions, the company stated, "Ellipse admits all facts finally found or concluded by the Courts in the adjudication of Ellipse v. Ford, *supra*, and denies any and all requests that are contrary to, or which collaterally attack, the facts finally found or concluded in said previous adjudication." Moreover, TRW's claim that Ellipse Corp. misled the court in the prior action is totally unsupported by the record.

The judgment of the district court is affirmed.

Affirmed.