### PINTO TRUCKING SERVICE, INC., Plaintiff,

v.

### MOTOR DISPATCH, INC., et al., Defendants.

### No. 74 C 2675.

United States District Court, N. D. Illinois, E. D.

Feb. 29, 1980.

---

McBride, Baker, Wienke & Schlosser, Chicago, Ill., for plaintiff.

B. John Mix, Jr., Chicago, Ill., for defendants.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IN ITS FAVOR AND AGAINST DEFENDANTS MOTOR DISPATCH, INC. AND HARRY NEWBERGER

MORAN, District Judge.

### I. *Factual Background.*

Pinto Trucking Service ("PTS") filed this lawsuit in September, 1974, alleging that two corporations and four individuals illegally conspired to destroy PTS as a business competitor. The plaintiff is an interstate motor carrier authorized by the Interstate Commerce Commission to transport air freight, *i. e.*, freight moved between specified airports immediately before or after having been moved by air. The complaint charged: (1) that Defendant Davie breached his employment agreement and fiduciary duties owed to PTS; (2) that the other five defendants unlawfully solicited Davie's breach of these duties; (3) that all defendants intentionally interfered with PTS' business relationships with its customers; (4) that each of these illegal acts was in furtherance of a conspiracy to cripple or destroy PTS as a business competitor of Defendants Motor Dispatch and Appaloosa and (5) that these acts violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and also constituted torts under state law.[1]

This case was tried once before. At the first trial the plaintiff presented evidence that in February, 1973, Davie became PTS' Midwest Regional Manager, a new position created because PTS began to expand from the East Coast to the Midwest, starting with service between Chicago and Detroit. Defendant Marston was the Chicago District Manager of an air freight forwarding company that used PTS' services. During the summer of 1973, Marston introduced Davie to defendant Meyers, who subsequently suggested that these three men form a new company to transport air freight between Chicago and Detroit. Defendant Appaloosa Air Cargo is the corporation formed by Davie, Marston and Meyers.

In September, 1973, Davie, Marston and Meyers met with defendant Newberger, the president of defendant Motor Dispatch. At that meeting, Appaloosa and Motor Dispatch entered into an agreement which resulted in Appaloosa obtaining the legal authority needed to operate between Chicago and Detroit. Appaloosa also leased the equipment it needed from Dependable Truck Leasing, a corporation owned and controlled by Newberger.

This entire sequence of events occurred while Davie was employed by PTS. Evidence presented at the trial also indicated that, before Davie stopped working for PTS, he failed to solicit new business for the company or to hire new employees; he terminated PTS' less-than-carload shipping service without permission from or notice to PTS; he solicited PTS' employees to leave the company and work for Appaloosa; and he apparently solicited PTS' customers for Appaloosa. As a result of these actions, PTS suffered a severe loss of business.[2]

The first trial began on July 19, 1977. On August 4, at the conclusion of PTS' case, the district court granted motions by Motor Dispatch and Newberger for directed verdicts on all counts of the Complaint. On August 11, the jury found for PTS against Davie, Marston and Appaloosa on the antitrust claims;[3] against Marston, Meyers and

---

1. The plaintiff's complaint also included additional causes of action which were withdrawn at the close of PTS' case. There were also various cross claims and counterclaims in the original lawsuit, which are no longer at issue.

2. This summary of the facts at the first trial is largely taken from the court of appeals decision at 2–3.

3. The jury also found for defendant Meyers and against PTS on this count of the complaint.

Appaloosa on the charge of inducing Davie to breach his employment duties; against all four Appaloosa defendants (Appaloosa, Davie, Marston and Meyers) on the charge of interfering with PTS' business relationships with customers; against Davie on the charge of soliciting and inducing owner/operators to terminate their contracts and business relationships with PTS;[4] and against Davie on the charge of breaching employment duties to PTS.

The defendants moved to vacate all judgments entered against them on the ground that the judgments were contrary to law and unsupported by the evidence. The district court granted the defendants' motions with respect to some of the jury verdicts and denied them with respect to others.[5] However, the Seventh Circuit Court of Appeals reversed each district court order granting the defendants' motions for judgment notwithstanding the verdict. The appellate court also reversed the district court decision that defendants Newberger and Motor Dispatch were entitled to directed verdicts. After considering several evidentiary issues and questions involving cross-claims and counterclaims, the court of appeals remanded the case "for a new trial with respect to defendants Motor Dispatch and Newberger and for a new trial on the issue of damages with respect to defendants Appaloosa, Davie, Marston and Meyers."

On remand, the plaintiffs filed a motion for summary judgment raising two separate questions: first, should this court as a matter of law find defendants Newberger and Motor Dispatch liable for the illegal conspiracy of the other four defendants? Second, if there is to be a new trial on the issue of the liability of Newberger and Motor Dispatch, in the trial of these two defendants does the fact that the other four defendants illegally conspired need to be relitigated, or are Motor Dispatch and Newberger bound by the jury verdicts rendered at the first trial and reinstated by the court of appeals?

## II. The Liability of Defendants Newberger and Motor Dispatch.

The court of appeals remanded this case for a "new trial" with respect to Newberger and Motor Dispatch. Given the wording of this mandate, it would be unusual for this court not to order a new trial at least on some issues involving these defendants. As both the plaintiff and the defendants agree, this court is not free to modify a court of appeals decision, and any issues which that court has decided cannot be reconsidered here in the absence of new evidence.

However, the opinion of the court of appeals is only binding as to those issues actually considered by that court. As Professor Moore points out:

> Where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court . . . . [T]he term law of the case 'when used to express the duty of a lower court to follow what has been decided by a higher court at an earlier stage of the case, applies to everything decided, either expressly or by necessary implication.' 1B *Moore's Federal Practice* ¶ 0.404[10] (2d ed.), quoting *Munro v. Post*, 102 F.2d 686, 688 (2d Cir. 1939). See also *Kuhn v. Nat'l Ass'n. of Letter Carriers, Branch 5*, 570 F.2d 757, 759 & n.3 (8th Cir. 1978).

The question, then, is whether the issues the plaintiff raises in this motion were decided "either expressly or by necessary implication," by the court of appeals. After carefully reviewing the court of appeals opinion, I believe those issues involving the liability of defendants Newberger and Motor Dispatch were considered above, and that the appellate mandate requires this court to hold a new trial as to those issues.

---

4. The jury found for defendants Marston, Meyers and Appaloosa on this charge.

5. The plaintiff also moved to amend the judgment on the antitrust count of the complaint, and for a new trial on the issue of damages. The district judge denied both motions.

The court of appeals divided its discussion of this question into two parts. The court first considered whether there was sufficient evidence in the record to support a jury verdict "finding Motor Dispatch and Newberger liable as coconspirators." Plaintiff's exhibits at A–11. On this issue, the court clearly held that a new trial was necessary:

". . . Motor Dispatch and Newberger supplied the Appaloosa defendants with everything they needed—the legal authority and the equipment—to implement their plan to destroy Pinto. Whether they did so knowingly is a question of fact which, considering the record, the jury could resolve either way." *Id.* at A–12.

This and other sections of the court of appeals decision indicate without question that the court believed there were substantial unresolved issues of fact which required a new trial giving the defendants a chance to present any defenses they might have, and giving the trier of fact an opportunity to review the evidence for both sides.

The plaintiff does not dispute the fact that the first trial did not conclusively establish that Newberger and Motor Dispatch participated in the illegal conspiracy. Instead, PTS argues that these two defendants are liable as a matter of law, because undisputed evidence shows the Appaloosa defendants were agents of Motor Dispatch, and the principal in such cases is liable for the torts of his agent.

However, this same issue was considered by the court of appeals in the second part of its discussion, and the court strongly implied that disputed, material issues of fact needed to be resolved before Motor Dispatch and Newberger could be found liable. The court recognized that "a verdict favoring these defendants on the conspiracy issue would not preclude a verdict favoring the plaintiff based on agency." *Id.* at A–13. The court also recognized that a principal can at times be "liable for the wrongful acts of its agent even though the acts were intentional and without the knowledge of the principal," and that "a principal who knowingly accepts the benefits of an agent's acts affirms and possibly ratifies that act, thus becoming liable where he otherwise would not have been liable." *Id.*

However, the court of appeals concluded that questions involving the nature and extent of the Appaloosa defendants' agency relationship with Newberger and Motor Dispatch, as well as a possible ratification of the illegal conspiracy, were issues of fact which were substantially in dispute. The court observed that "the evidence, although not uncontradicted, is such that a jury reasonably could infer that such an agency relationship between Motor Dispatch and Appaloosa did exist, and that Motor Dispatch is liable as a result of that relationship." This language, combined with the fact that the case was remanded for a new trial, strongly implied that the liability of Motor Dispatch as a result of its relationship with Appaloosa could not be decided on the basis of the evidence before the court of appeals, which is substantially the same as that before this court on the motion for summary judgment. This court is bound by that conclusion above.

III. *The Liability of the Appaloosa Defendants.*

Since there is to be a new trial in this case, it is necessary to consider the plaintiff's contention that defendants Newberger and Motor Dispatch should be barred from relitigating the issue of whether the other four defendants unlawfully conspired to destroy PTS as a business competitor. The court of appeals has reinstated the jury verdicts against those four defendants, but Newberger and Motor Dispatch argue that since their motions for directed verdicts were granted before they presented any defenses, and before the jury returned its verdict, that any conclusions reached as a result of the first trial cannot be binding against them.

This is a difficult issue that treads the thin line between collateral estoppel, *res judicata* and the principle of "law of the case." Initially, the defendants contend that the court of appeals mandate, because it orders a "new trial," requires this court

to retry the entire case against Newberger and Motor Dispatch, including those issues which were decided in the first trial and appeal. A fair reading of the entire decision above, however, does not support this conclusion. If anything, the court of appeals assumed that the issue of whether there had been a conspiracy between the four Appaloosa defendants would not be retried after the case was remanded. In discussing whether there was enough evidence to support a jury verdict against Newberger and Motor Dispatch, for example, the court observed: "Because the jury has found that a conspiracy existed among the Appaloosa defendants, the 'slight evidence rule' applies," plaintiff's exhibits at A–10. The thrust of the decision above was that the liability of Newberger and Motor Dispatch could not be determined without a new trial, but the court nowhere indicated that this new trial would be a repeat performance of the entire proceeding held in July and August, 1977. *See generally* 1B *Moore's Federal Practice, supra.*

The jury verdict against the Appaloosa defendants, which was reinstated by the court of appeals, cannot strictly speaking be considered *res judicata* as to defendants Newberger and Motor Dispatch, since no judgment was entered against them in the first trial and appeal.[6] However, I am persuaded that modern principles of collateral estoppel and issue preclusion bar defendants Newberger and Motor Dispatch from relitigating issues which were decided by the jury in the first trial, were argued before the court of appeals, and were resolved in PTS' favor.

The modern principles of collateral estoppel were recently described by the Supreme Court in *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In that case, the defendant had filed a stockholder's class action in federal district court. Before the action came to trial, the Securities and Exchange Commission successfully sued the same defendants for essentially the same violations of the law. The class action plaintiff then moved for partial summary judgment, asserting that the defendants were estopped from relitigating the issues that had been resolved against them in the SEC suit.

The Supreme Court agreed with the plaintiff. In addition to discussing the Seventh Amendment issues involved in the case, Justice Stewart, writing for the majority, summarized the recent development of collateral estoppel principles. He observed that the historical requirement of "mutuality" was outdated, and that, as a result, both "offensive" and "defensive" uses of collateral estoppel have been expanded. *Id.* at 326–30, 99 S.Ct. at 648–651. Justice Stewart stated that the fundamental requirement for applying collateral estoppel is that the party against whom the estoppel is asserted had a "full and fair opportunity" to present his case in the previous lawsuit. He went on to describe the standards which should be applied in an "offensive" estoppel situation, when the plaintiff seeks to bar a defendant from relitigating issues which the defendant previously litigated and lost against another plaintiff:

> we have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of offen-

---

6. The plaintiff disagrees with this conclusion and argues that under F.R.Civ.P. 54(b) the district court order dismissing defendants Newberger and Motor Dispatch was not final until the verdict against Appaloosa and the other defendants had been returned. Since these two defendants were parties when the jury verdict was entered, plaintiff concludes the principle of

*res judicata* bars relitigation of issues already decided. However, as the defendant points out, Rule 54(b) is primarily intended to govern the timing of appeals, and the rule assures that cases are not appealed in a piecemeal fashion. I am not persuaded that this procedural rule should have the enormous substantive impact which the plaintiff suggests.

sive collateral estoppel. *Id.* at 331, 99 S.Ct. at 651.

Under this modern approach, much is left to the discretion of the trial court to determine whether permitting "offensive" use of collateral estoppel is fundamentally fair, and whether the party against whom the estoppel is asserted had a full opportunity to air his or her views in the previous trial.

Defendants Newberger and Motor Dispatch argue that they did not have a full and fair chance to present their case at the first trial, because after their good faith motion for a directed verdict was granted they had no reason to continue to defend their position. They contend that they never presented a defense which might have influenced the jury to reach a different conclusion even as to the liability of the four Appaloosa defendants. However, given the history of this case, and the extent of these two defendants' participation at trial and on appeal, I am unpersuaded by this argument.

■ The defendants base their contention largely on the fact that they were not parties in this case after they received a directed verdict, and therefore any judgment obtained after that time cannot be held against them. However, under the modern, expansive approach to issue preclusion and privity, there is no requirement that someone remain an official party in a case in order for him or her to be bound by the judgment. Professor Moore points out:

> If a non party who . . . participates in litigation has an interest sufficiently close to the matter in litigation, and has adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based, the policies underlying the doctrine of judicial finality require that the participating non-party should be bound by the resulting judgment to the same extent as though he were a party to the action. And if his opponent had knowledge of the non-party's participation, the same policies require that the opponent should be bound by a judgment favorable to the non-party's interest, in other litigation

between the opponent and the participating non-party. 1B *Moore's Federal Practice* ¶ 4.11[6] (2d ed.).

Professor Moore favors calling these participants "substantial parties," and he points out that the term "privity" is somewhat misleading. But whatever the terminology, it is clear that a party who had a substantial interest in the outcome of a lawsuit, and who participated in a significant way with the litigation, should be bound by the judgment rendered. See *TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314 (7th Cir. 1974); *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977).

There is no question that defendant Newberger and Motor Dispatch had a significant interest in the outcome of the first trial, even after their motion for a directed verdict was granted. They had been accused of participating in a conspiracy with the four Appaloosa defendants, and Appaloosa was an important part of Motor Dispatch's air freight business. Defendants Newberger and Motor Dispatch had an interest in this case somewhat analogous to a manufacturer who participates on behalf of a dealer in a suit for patent infringement, or an indemnitor who assists an indemnitee at trial. See 1B *Moore's Federal Practice, supra.* Though the defendants' interest in the outcome of this litigation was perhaps not as great as in these analogous situations, the fact that Newberger and Motor Dispatch were *parties* to the litigation throughout all of the pretrial proceedings and much of the trial buttresses the conclusion that they had a substantial and direct interest in the outcome of the case.

Since the defendants had a substantial interest in the outcome of the first trial, the question becomes a factual one: whether the "extent" of their "participation" was sufficient for them to be bound by the jury verdict which was reinstated by the court of appeals. See *TRW, Inc. v. Ellipse Corp., supra*, 495 F.2d at 318. The defendants were parties to this case during much of the trial; they participated fully in the appeal; defendant Newberger testified at the trial, and his affidavit presented in opposition to

the motion for summary judgment presents no new factual claims about the conspiracy of the four Appaloosa defendants which he did not present when he testified; the defendants received a directed verdict as a result of their own motion, and they had a full opportunity to remain in the case if they wished to do so; at trial the defendants not only had the opportunity to be heard, they *were* heard throughout the presentation of the plaintiff's case; and these defendants repeatedly have professed a lack of knowledge about any details of the Appaloosa defendants' actions and have not come forward with any evidence they would present on this issue which was not presented in the first trial. Under these circumstances, I find that defendants Newberger and Motor Dispatch were "substantial parties" in the first trial, that they are bound by the jury verdicts finding the four Appaloosa defendants liable, and that they are precluded from contesting the fact that an illegal conspiracy existed between the four Appaloosa defendants.

Issue preclusion disputes have gradually shifted from mechanistic application of rules respecting parties and privies to determinations of whether the party being precluded has had a full and fair opportunity to litigate the matter. This court has no quarrel with the concept. There is no good reason why plaintiff should be required, in the circumstances of this case, to relitigate the issues it fully litigated in the earlier action.

Once having so stated, however, I question whether the decision reached will have a substantial impact on the evidence presented. Defendants remain free to contest their latter day participation in the conspiracy, which may well require a development of facts relating to the formation of the conspiracy found by the jury. Further, a jury may well be able to find liability under an agency theory for damages sustained after the new enterprise was formed, while finding that the Motor Dispatch defendants were never co-conspirators. Presumably that would require a further determination as to whether damages occurred before or after Motor Dispatch became a principal, thus necessitating an evidentiary development of those damage issues. Again, it is questionable whether Motor Dispatch, if not a co-conspirator, can be held liable as a principal for injury caused by its agents' subsequent conduct which would have been lawful were it not for the earlier initiated conspiracy, e. g. solicitation of customers.

If this case is any example, the virtue of "due process" issue preclusion is not judicial economy. It has necessitated careful review of the entire record in the prior trial and it may not substantially shorten the retrial. As I have said, however, there is no good reason to let another trier of fact decide the core issues previously determined.

The plaintiff's Motion for Summary Judgment is, therefore, granted in part and denied in part. Defendants Newberger and Motor Dispatch are entitled to a new trial, but at this trial they are precluded from contesting those issues decided by the jury at the first trial of this case.